IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>       Plaintiff,<br><br>vs.<br><br>GRINNELL COLLEGE, SARAH MOSCHENROSS, ANGELA VOOS, and BAILEY ASBERRY,<br><br>       Defendants. | No. 4:17-cv-079-RGE-SBJ<br><br><br>**DEFENDANTS' UNSEALED REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

**I.   Plaintiff failed to generate a disputed issue of fact showing intentional sex bias motivated Grinnell's disciplinary decisions.** ............................................................................. 1

  **1.   Sex-neutral training materials authored by third parties do not show of sex bias.....** 1

  **2.   Plaintiff fails to meet his burden to show that similarly-situated non-male students were treated more favorably.** ................................................................................................. 3

    **a.   A female student ▇▇▇▇▇▇▇ and was not eligible for the sanction of dismissal is not "similarly-situated" to Plaintiff, ▇▇▇▇▇▇▇.** ....................... 4

    **b.   A female student ▇▇▇▇▇▇▇▇▇▇ fails the "similarly-situated" test because her circumstances involved different decision-makers, was less serious, and cannot be viewed as "disparate" to Plaintiff.** .................. 5

    **c.   Evidence that a female student ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇ is not evidence that a pattern of sex discrimination.** ...................................... 7

    **d.   Plaintiff ignores the undisputed facts which the Eighth Circuit maintains casts doubt on Plaintiff's allegation of sex bias based on comparator students.** ....................... 8

  **3.   Merely second-guessing Justice Ternus's decision-making process does not generate a disputed issue of fact that sex bias existed.** ....................................................................... 9

  **4.   Plaintiff's arguments about alleged "pressure" from a third parties fail to demonstrate that sex motivated Grinnell's disciplinary decision toward Plaintiff.** ......... 10

I

II.   Plaintiff fails to generate an issue of material fact showing an articulable doubt about the outcome of his student discipline..................................................................... 12

    A.   Plaintiff overlooks the mandatory three-party agreement required for a "final" informal resolution, and ignores the Policy language that permitted Grinnell to investigate Doe's complaint............................................................................ 12

    B.   Because Plaintiff concedes that he knowingly participated in the full investigation and adjudication of Jane Doe's allegation of misconduct from a second incident on August 29, 2015, his claim that he didn't receive "notice" of it is superficial................................................................................................................ 15

    C.   Justice Ternus's conclusions were accurate and applied the appropriate Policy language to Plaintiff's discipline..................................................................... 15

    D.   Plaintiff's sanction of dismissal and Moschenross's conduct was not erroneous. 18

    E.   No disputed facts cast doubt on the accuracy of the outcome of his appeal...... 19

    F.   Plaintiff's miscellaneous arguments are unsupported........................................ 21

III.  Plaintiff fails to generate a disputed issue of fact that Grinnell breached the Policy. 21

    1.   On the timely-pled breach of contract claims, Plaintiff failed to generate a disputed issue of fact showing Grinnell failed to substantially comply with the Policy. .................................................................................................................. 22

    2.   Plaintiff's new breach of contract claims fail because they are either unsupported, or because they don't show a failure to substantially comply......... 22

    3.   The good faith and fair dealing argument is not proper or actionable......... 24

IV.   Plaintiff's estoppel and reliance claims should be dismissed. .................................... 24

V.   Plaintiff failed to generate a disputed issue of fact that the statements made at his November 2015 meeting were false. ...................................................................................... 25

Conclusion .................................................................................................................................. 25

I.   **Plaintiff failed to generate a disputed issue of fact showing intentional sex bias motivated Grinnell's disciplinary decisions.**

Plaintiff failed to generate an issue of fact showing his sex motivated the outcome of his discipline. At the summary judgment stage,[1] "[t]he Title VII standards for proving discriminatory treatment should apply to claims arising under Title IX." *Brine v. Univ. of Iowa*, 90 F.3d 271, 276 (8th Cir. 1996) (citation and quotation marks omitted). "A plaintiff may illustrate gender bias by identifying 'statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender.'" *Rossley v. Drake Univ.*, __ F. Supp. 3d __, 2018 WL 5307625, at *15 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). To show a "causal link" between sex bias and a disciplinary outcome, "the [plaintiff] cannot merely rest on superficial assertions of discrimination, but must establish that "particular circumstances suggest[] that gender bias was a motivating factor." *Doe v. Trustees. of Boston Coll.*, 892 F.3d 67, 91 (1st Cir. 2018).

1.   **Sex-neutral training materials authored by third parties do not show of sex bias.**

First, Plaintiff argues select excerpts of training materials amount to sex discrimination. As Plaintiff indicates, *see* Pl. Br. 30-31, these materials are authored by third parties, so they do not qualify as "statements by members of the disciplinary tribunal [or] statements by pertinent university officials." *See Yusuf*, 35 F.3d at 715. Because they were not made by Grinnell or its officials, they are immaterial. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Villanueva v. City of Scottsbluff*, 779 F.3d 507, 510 (8th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*,

---

[1]   Throughout his analysis on this issue, Plaintiff refers the Court to inapposite citations about the sufficiency of pleading sex discrimination under Rule 12 instead of Rule 56. *See* Pl. Br. at 12-13; 20, 34-35, & 38.  This procedural difference is meaningful, as this Court has observed. *See, e.g., Rossley.*, 2018 WL 5307625, at *17.

1

477 U.S. 242, 248 (1986)). They are also immaterial because Plaintiff cites no evidence to show these materials caused Grinnell's decision-makers to develop an intentional sex bias toward male students generally, or to Plaintiff in particular. *See* Pl. Br. at 30-31. To conclude otherwise, without evidence, is impermissible on summary judgment. *See Banks v. Deere*, 829 F.3d 661, 666 (8th Cir. 2016) (speculation is insufficient to defeat summary judgment).

Second, the training materials do not suggest or infer anti-male bias—they discourage it. In the Husch Blackwell training materials, the statements about resolution; the Office of Civil Rights ("OCR"); and communicating orally about mistakes, are completely gender neutral. *See* P. App. 445 & 454. No reasonable juror could interpret them as evidence of sex bias. Plaintiff also misrepresents the context of the "leading questions" and "conclusory" questions he claims to be problematic. Pl. Br. at 30-31. The training materials state: "<u>Don't</u> ask leading questions;" "Don't ask conclusory questions;" and "Don't be satisfied with conclusory answers." P. App. 395; 398 (emphasis in original). The training materials then provided examples of leading and conclusory questions, and sample conclusory answers, as examples of what to avoid. P. App. 395-399. The training identifies a statement of bias: "We're going to get him . . . I promise!" as an "interview pitfall," meaning something that should be avoided. P. App. 403. In other words, the training material cautions against the very conduct Plaintiff claims to be problematic.

Plaintiff also takes issue with a "session scenario," that explores Title IX concepts with an illustrative example involving a sexual relationship between a male faculty member and female student. *See* P. App. 371. It's unclear why Plaintiff believes this is evidence of sex bias, since it does not make any assumptions or inferences about male or female behavior. It was merely an example of a scenario that might arise. He cites no evidence showing it that it planted a seed of sex bias in trainees.

The training materials Justice Ternus received are not evidence of sex bias, either. Most of the statements Plaintiff points to (about recantation being normal, not ending the investigation process, and that a "complainant's word is sufficient to sustain burden of proof—preponderance of the evidence") are entirely sex neutral. P. App. 318, 320, 323, 325. Other phrases Plaintiff cites ("I led him on," "he will say we just got drunk and had sex," "I don't want to be 'that girl'") were provided as illustrative examples of counter-intuitive statements a victim might say in a Title IX matter. P. App 318. They do not state that a decision-maker should make any assumptions about sex, much less let sex influence the handling of a disciplinary matter. None of these presentations otherwise mention gender or encourage trainees to presume that females tell the truth, or contain biased assumptions about men.

Finally, case law does not support Plaintiff's position that a handful of gendered pronouns in extensive training material (over 300 slides) can defeat summary judgment. *See Doe v. Colgate Univ.*, No. 5:15-CV-1069, 2017 WL 4990629, at *14 (N.D.N.Y. Oct. 31, 2017) (holding selected excerpts of training materials authored by a decision-maker, which contained gendered pronouns, "is too benign and isolated to permit an inference that [the] training materials caused the training's attendees to become gender biased") (citing *Hardy v. New DN Co.*, No. 95-CV-5818, 1997 WL 666212, at *11 (S.D.N.Y. Oct. 24, 1997) (quotation omitted)); *see also Doe v. Univ. of Denver*, No. 16-CV-152, 2018 WL 1304530, at *10 (D. Colo. Mar. 13, 2018) (finding training materials didn't establish evidence of sex bias in Title IX claim).

## 2. Plaintiff fails to meet his burden to show that similarly-situated non-male students were treated more favorably.

Next, Plaintiff attempts to create a disputed issue of fact by comparing other students' discipline to his. In the Eighth Circuit, a non-movant who attempts to rely on circumstantial evidence of comparators to establish sex bias on summary judgment must do more than merely

3

point to other conduct and make conclusory arguments, which is all Plaintiff has done here.

Instead, a resisting party must satisfy the "rigorous test" of identifying comparators who are

"similarly situated in all relevant respects." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1051

(8th Cir. 2011) (citation omitted). The Eighth Circuit provides the following test to determine the

sufficiency of a putative comparator to establish sex discrimination at the summary judgment

stage:

> "The individuals used for comparison must have dealt with the same supervisor,
> have been subject to the same standards, and engaged in the same conduct without
> any mitigating or distinguishing circumstances." *Clark v. Runyon*, 218 F.3d 915,
> 918 (8th Cir. 2000). Furthermore, "to be probative evidence of pretext, the
> misconduct of more leniently disciplined [individuals] must be of comparable
> seriousness." *Rodgers*, 417 F.3d at 853 (quoting *Harvey v. Anheuser-Bush, Inc.*,
> 83 F.3d 968, 972-73 (8th Cir. 1994)) (internal quotation marks omitted).

*Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012).

Plaintiff, not Defendants, has the burden to prove comparators are similarly-situated. *See*

*Torgerson*, 643 F.3d at 1051 (holding that plaintiffs "have the burden to prove that they and the

comparators were "similarly situated in all relevant respects"). Plaintiff fails to meet his burden.

**a. A female student ███████████████ and was not eligible for the sanction of dismissal is not "similarly-situated" to Plaintiff, █████████████.**



First, Plaintiff claims that in ████████, a female respondent (Student A) was treated more

favorably than he was. Pl. Br. at 31; SAF 91. ████████████████████████

████████████████████████████████████, she was treated exactly the

same as Plaintiff. *See id.* Plaintiff argues Student A's sanction (███████████████████) was

more favorable than his dismissal. *See id.* However, as Justice Ternus wrote in her adjudication,

the sanction of dismissal was unavailable for Student A. *See* P. App. 1666. That's because

████████████████████████. D. Supp. App. 1[¶ 2]. So, instead, Justice

Ternus issued the most serious sanction available to a graduate: ███████████████. *See*

4

*id.*; Pl. Br. at 31. In contrast, Plaintiff ███████████████████████████████████████

██████████████████, so the sanction of dismissal was available to him after he was found

responsible for Prohibited Conduct. Because of this "mitigating or distinguishing circumstance,"

Plaintiff fails to demonstrate Student A is a comparator. *See Bone*, 686 F.3d at 956; *Torgerson*,

643 F.3d at 1051.

     Plaintiff also complains that, unlike him, Student A ███████████████████████

██████████████████████████. Tellingly, Plaintiff omits the sex-neutral mitigating

factors that distinguish Plaintiff from Student A on this point. Unlike Plaintiff, Student A █████

████████████████████████████, and Justice Ternus did not have

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████." P. App. 1666███

██████ it's undisputed that in Plaintiff's case, Justice Ternus held sincere concerns that Plaintiff

posed a continuing safety risk to campus. *See* P. Admission (docket 129), ¶ 123. This mitigating

factor also defeats Plaintiff's ability to prove disparate treatment based on Student A's sanction.

*See Bone*, 686 F.3d at 956; *Torgerson*, 643 F.3d at 1051.

    **b.  A female student** ████████████████████████████████████ **fails the**
        **"similarly-situated" test because her circumstances involved different decision-**
        **makers, was less serious, and cannot be viewed as "disparate" to Plaintiff.**

    Next, Plaintiff compares himself to a female student █████████████████████

██████████████████████████. *See* Pl. Br. at 31. Plaintiff claims

Student B was treated more favorably because ████████████████████████████

██████████████████████████. *See id.*; Pl. SAF ¶¶ 95 & 96.

Student B fails as a comparator because different decision-makers were responsible ███████

5

about Student B. Voos and Asberry, through the Title IX office, were the Grinnell officials who decided that Jane Doe and Roe's reports should be handled through the formal disciplinary process.[2] P. APP-486[85:13-17]. However, ███████████████████████—not Voos, Asberry or the Title IX office—were responsible for and had control over ███████████ ████████████████. D. Supp. App. 2[¶ 8].

███████████████████████████████████████. *Id.* ¶ 6. ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████. *Id.* at ¶¶ 6-7. Based on these undisputed facts, Student B cannot be a comparator. *See Bone*, 686 F.3d at 956 (holding 19 putative comparators insufficient because the adverse decision was made by decision-makers other than plaintiff's).

Additionally, Student B's alleged misconduct, while falling under the Policy's definition of non-consensual intercourse because ██████████████, was far less severe than Plaintiff's. ███████████████████████████████████████████. D. Supp. App. 2[¶ 4]. When █████████████████████████████████ ███████████████████████████████████████████ █████████████████████████. *Id.*[¶ 5]. In contrast, the conduct Plaintiff was accused of (sexual contact with Jane Doe twice, once to the point of climax; vaginal intercourse and digital anal penetration with Jane Roe) was far more serious. And, ██████████, there was no suggestion that Plaintiff ████████████████

---

[2] Plaintiff argues Moschenross was insufficiently involved in this decision. Even if the parties assume Moschenross was involved in the decision to pursue formal discipline for Plaintiff, it's clear she had no involvement in the decision to pursue informal resolution for Student B. D. Supp. App. 2 [¶ 8].

████████████████████████████████████████████. These mitigating

factors distinguish Plaintiff's case. *See Bone*, 686 F.3d at 956 ("The individuals used for

comparison must have . . . engaged in the same conduct without any mitigating or distinguishing

circumstances."); *Martinez v. W.W. Grainger, Inc.*, 664 F.3d 225, 231 (8th Cir. 2011) (holding

"less problematic conduct" defeated putative comparator on summary judgment).

Finally, Student B fails as a comparator because Plaintiff incorrectly presumes that

Student B's ███████████████ amounts to disparate treatment. To meet his burden to show

Student B was treated disparately, Plaintiff must establish that, like him, *if* █████████████

had been processed through Grinnell's formal disciplinary process, Student B either *would not

have been* found responsible, or if found responsible, she *would not have received* the sanction of

dismissal. He fails to make this argument because he cannot—it requires speculation. So, he can

only presume that processing her reports through informal discipline was "disparate" treatment.

These multiple layers of speculation and conjecture are insufficient at the summary judgment

stage. *See Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 (8th Cir. 1994) (holding

a plaintiff's mere belief that a putative comparator had engaged in similar misconduct was

insufficient to establish evidence of bias on summary judgment); *see also Reed v. City of St.

Charles, Mo.*, 561 F.3d 788, 791-792 (8th Cir. 2009) (the Court "is not required to accept

unreasonable inferences or sheer speculation as fact" under Rule 56 (citation and internal

quotation marks omitted)).

   **c.** **Evidence that a female student ████████████████████████████
████████████ is not evidence that a pattern of sex discrimination.**

The last putative female comparator Plaintiff identifies was dismissed for ███████████

████████████████████████████████ (Student C). *See* Pl. Br. at 31-32. First, this fails to

establish a pattern of biased decision-making because this *female* student received an outcome

exactly the same as Plaintiff's, and similar treatment of students outside Plaintiff's class

diminishes any suggestion of sex bias. *See Bone*, 686 F.3d at 956. And, Student C was

disciplined for different conduct than Plaintiff (███████████████████████████). *See*

Pl. SAF 94. This disqualifies her as a comparator. *See Bone*, 686 F.3d at 956. Nevertheless,

Plaintiff argues this evidence qualifies as evidence of a pattern of sexist decision-making,

writing:



Pl. Br. at 31-32 (emphasis Plaintiff's).

This seriously misrepresents Voos's testimony. Voos testified that based on the results of

this research, there "███████████████████████████." P. App.

491[133:2-135:7]. That is, Voos did *not* testify that ████████████████████

████████████ *See* P. App. 491. Plaintiff also omitted the testimony where Voos specifically

states that Grinnell applied the preponderance standard, not a heightened standard:

> Q: And was the preponderance of the evidence standard applied in this case?
> A: Yes.

P. App. 491[135:8-10]. This evidence fails to generate evidence of sex bias.

### d. Plaintiff ignores the undisputed facts which the Eighth Circuit maintains casts doubt on Plaintiff's allegation of sex bias based on comparator students.

Plaintiff also ignores student discipline that demonstrates an absence of discriminatory

bias, which is fatal to his comparator evidence argument. *See* Pl. Br. at 32. Students found

responsible for sexual misconduct under Grinnell's policies ███████████████████

████████████. D. App. 195. ████████████████████████████



It's well-settled that similar treatment of students outside a plaintiff's protected class "casts doubt on [the plaintiff]'s suggestion that the alleged lenience for [a] comparator is evidence of pretext or prohibited bias." *Bone*, 686 F.3d at 957 (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 925 (8th Cir. 2004)). There is no pattern of discriminatory decision-making.

### 3. Merely second-guessing Justice Ternus's decision-making process does not generate a disputed issue of fact that sex bias existed.

Plaintiff also argues there is evidence of intentional sex bias in Justice Ternus's opinions on his discipline. *See* Pl. Br. at 32. Plaintiff asserts that Justice Ternus's opinions "demonstrate a belief that females are incapable of asserting themselves in sexual situations with male counterparts," and cites a series of bullet-point excerpts from her opinions. However, none of the selected excerpts suggest that Justice Ternus held these views. For example, Plaintiff argues that Justice Ternus believed that Jane Doe was young and inexperienced and unfairly credited her version of events over Plaintiff's for that reason. *See*, e.g., Pl. Br. at 33.[3] Plaintiff also complains that Justice Ternus "punished Plaintiff for not fully understanding how consent worked during his encounter with Jane Doe," and that she considered Jane Doe's "subjective feelings" that "had

---

[3] This argument also misstates Justice Ternus's finding. She wrote that she found Jane Doe's "testimony credible because she had a confident recollection of what happened," while Plaintiff "stated that he did not remember much about his interactions with [Jane Doe], and what he did remember of the first encounter corroborated much of what [Jane Doe] recalled." D. App. 226-227.

[Jane Doe] been given a choice, . . . she would not have wanted Plaintiff to kiss her." Pl. Br. at

33.  Plaintiff questions Justice Ternus's finding in Roe's report, pointing out that Jane Roe could

have left Plaintiff's room, that she asked Plaintiff to put on a condom, and criticizes Justice

Ternus's conclusion that Jane Doe running out of birth control pills supported her assertion that

she didn't want to engage in intercourse. Pl. Br. at 34.

No reasonable juror would conclude these assertions are evidence of intentional sex bias.

They do not mention sex or make any assumptions about responsibility or the facts. Plaintiff

instead is attempting to second-guess Justice Ternus's sincere belief that he sexually assaulted

two students. This is insufficient to defeat summary judgment. *See Blackwell v. Alliant

Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016) (in Title VII case on summary judgment,

the inquiry is whether there was a "good faith belief" in discipline for misconduct).  In Title IX

student disciplinary cases, "[t]he Court's role, of course, is neither to advocate for best practices

or policies nor to retry disciplinary proceedings." *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 461

(S.D.N.Y. 2015) (citation omitted). Plaintiff fails to show Justice Ternus harbored sex bias.

### 4.  Plaintiff's arguments about alleged "pressure" from a third parties fail to demonstrate that sex motivated Grinnell's disciplinary decision toward Plaintiff.

Plaintiff argues that the pressure from outside groups, including *Dissenting Voices*, the

*Huffington Post*, and the Office of Civil Rights, is sufficient evidence to defeat summary

judgment. In doing so, Plaintiff makes the erroneous argument that evidence of alleged

"pressure" from outside groups "to protect female assault victims and issue harder sanctions

against male respondents" is sufficient in and of itself to establish an "inference" of sex bias on

summary judgment, citing *Doe v. Miami Univ.*, 882 F.3d 579, 592-593 (6th Cir. 2018) for this

proposition. Pl. Br. at 38. This is incorrect. *Miami University* dealt with the sufficiency of notice

pleading of discriminatory intent under Rule 12(b)(6)—not the sufficiency of evidence required

10

to defeat summary judgment under a Rule 56 summary judgment motion.[4] *See id.*; *Rossley*, 2018 WL 5307625, at \*17 (holding that the different legal standards and factual context "make[s] the comparison inapt"); *Colgate*, 2017 WL 4990629, at \*12 (rejecting Plaintiff's reliance on Rule 12(b)(6) minimal pleading standard to establish evidence of sex bias under Title IX under Rule 56). At the summary judgment stage, Plaintiff must prove that these facts show intentional sex bias motivated Grinnell's discipline of Plaintiff; inferences are insufficient. *See Boston Coll.*, 892 F.3d at 91.

Plaintiff fails to explain how the *Dissenting Voices* campaign is evidence that sex bias played a role in his discipline. This is fatal to his argument, as case law makes clear. *See Colgate*, 2017 WL 4990629, at \*13 (granting summary judgment on Title IX claim, holding that mere allegations about the impact of student activism on sexual assault was insufficient to establish sex bias). Plaintiff fails to identify any link between Grinnell's facially neutral response to *Dissenting Voices's* demands,[5] and no evidence suggesting it impacted his investigation, his adjudication, or the imposition of his sanction. He cites no evidence that his adjudicator or the official who imposed the sanction of dismissal were aware of the specific demands or pressures made by *Dissenting Voices*. He cites no statement made by Grinnell officials in response to *Dissenting Voices* that suggests any bias or assumptions against males. Consequently, facts about *Dissenting Voices* are ancillary and immaterial. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Villanueva*, 779 F.3d at 510 (quotation omitted).

---

[4] Plaintiff's other citations to the wrong standard should be disregarded: *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016); *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573 (E.D. Va. 2018), and *Doe v. Washington & Lee Univ.*, 2015 WL 4647996, at \*10 (W.D. Va. Aug. 5, 2015). Pl. Br. at 12-38.

[5] Requiring students in safety roles to be in good standing, allowing students to refer to conduct as "rape," increasing the records retention period, setting timelines, and implicit bias training to address unconscious bias against women. Pl. Br. at 35.

Plaintiff also discusses extensively the *Huffington Post* article, Grinnell's response to it, and the 2015 OCR investigation. Pl. Br. at 36-39. Again, he fails to identify any evidence related to these circumstances that suggests gender bias was a motivating factor in his case. That is, he cites no evidence showing how these facts have any relationship to him, his adjudication, sanction, or the decision-making process related to his discipline. He fails to point to any statement made by any Grinnell official in any of these circumstances that suggests or implies disparate treatment for male students or assumptions about responsibility for sexual misconduct. These immaterial facts cannot defeat summary judgment. *See Villanueva*, 779 F.3d at 510. Additionally, to conclude that these facts generated evidence that sex played a role in Plaintiff's discipline would require the Court to speculate that because these alleged "pressures" existed, Grinnell caved to them and allowed the pressure to infect Plaintiff's discipline. This is impermissible. *See Reed*, 561 F.3d at 791. Quite simply, Plaintiff fails to generate an issue of fact that "particular circumstances suggest[] that gender bias was a motivating factor" in his discipline. *See Boston Coll.*, 892 F.3d at 91.

## II. Plaintiff fails to generate an issue of material fact showing an articulable doubt about the outcome of his student discipline.

On his Title IX claim, Plaintiff also failed to generate evidence that shows an "articulable doubt" as to the accuracy of the outcome of his discipline. *See Yusuf*, 35 F.3d at 715.

### A. Plaintiff overlooks the mandatory three-party agreement required for a "final" informal resolution, and ignores the Policy language that permitted Grinnell to investigate Doe's complaint.

Plaintiff's brief confuses two principles in arguing that Grinnell erred in converting Doe's informal resolution to formal discipline. *See* Pl. Br. at 14. Plaintiff correctly points out that in November 2015, Jane Doe and Grinnell agreed that informal resolution of Jane Doe's report was appropriate at that time. This is undisputed. Plaintiff's error arises because he conflates the

agreement to informally resolve Jane Doe's report with an agreement among the three parties

that the informal resolution was "final." The Policy makes clear that these are two distinct

concepts. The only requirement needed to informally resolve a report is voluntary participation

by the complainant and Grinnell. *See* P-APP 272 (stating that informal resolution can occur

when the senior official deems it appropriate and the Complainant's participation is voluntary

and can be withdrawn). The Policy section about whether the informal resolution is "final" is a

separate consideration: "[I]n some instances, an Informal Resolution, *by agreement of the*

*Complainant, the Respondent, and the College* is meant to be a final resolution." *See* Pl. Br. at

14; Pl. Admission (docket 129), ¶ 25 (emphasis added). So, in order for any informal resolution

to be considered final, there must be a three-way agreement between the Complainant,

Respondent, and Grinnell that the informal resolution is "meant to be a final resolution." *Id.*

Plaintiff's error is his assumption that agreement to participate in informal resolution is the same

as an agreement that the informal resolution is "final"—it's not. *Id.*

Plaintiff has not generated any evidence to show that there was a three-way "agreement"

about the finality of the informal resolution. All Plaintiff has done is confirm that there was an

agreement to informally resolve Jane Doe's report in November 2015. In responding to

Defendants' statement of fact, which cites Voos's declaration that there was never a three-way

agreement on finality, Plaintiff focuses on whether the Policy required that an agreement for

final resolution must be "written. *See* docket no. 129, at ¶ 83. Plaintiff misses the point, which is

that there was no agreement at all that the resolution was "final," much less a written agreement.

To dispute this supported fact, Plaintiff must come forward with evidence that he, Jane Doe, and

Grinnell all agreed that the informal resolution was "final," whether in writing or not. Pl. R.

SUMF (docket no. 129), ¶ 25; Fed. R. Civ. P. 56(c)(1). He fails to do this. *See id.* Instead, he

provides declarations from himself and his mother stating they personally believed the informal

resolution was final. *See* Pl. App. 1757-58 & 1183-84.  Their personal belief is not evidence that

disputes the absence of a three-way agreement on finality. *See id.; Colgate*, 2017 WL 4990629,

at *17 (a plaintiff's subjective opinion is insufficient to defeat summary judgment).

Plaintiff also makes an erroneous argument that the Policy prohibited investigating Jane

Doe's report. He argues:

> Under the Policy, the *only* circumstances in which an informally resolved report
> may later be investigated is where "a Complainant requests an investigation *and*
> conduct (corrective) action *and* where Informal Resolution was unsuccessful or
> not an appropriate form of resolution." P-App 274.

Pl. Br. at 16 (emphasis Plaintiff's). Plaintiff's citation misquotes the Policy and misrepresents its

contents. The portion of the Policy Plaintiff cites at P-App 274 is captioned "Decision to Initiate

Investigation," and provides:

> The College will pursue an investigation where a Complainant requests an
> Investigation and conduct (corrective) action, *where the College determines that*
> *an investigation is warranted based on the Title IX assessment,* or where Informal
> Resolution was unsuccessful or not an appropriate form of resolution.

P. App 274 (emphasis added).

Plaintiff omitted the italicized portion of this Policy section from his brief, which is

telling, since the italicized portion gives Grinnell the express authorization to investigate a

complaint when, after completing an assessment, it determines an investigation is warranted. It's

undisputed that when Voos and Asberry received Roe's report, they assessed both Jane Doe's

report and Jane Roe's report, and determined that Grinnell should pursue a formal investigation

into both due to their concern about Plaintiff engaging in a pattern of Prohibited Conduct. *See* P.

Admission (docket 129), ¶¶ 89-90; *see also* P-APP599. The plain language of the Policy permits

an investigation when Grinnell "determines that an investigation is warranted based on the Title

IX assessment." D. App. 41. There's no dispute that Voos and Asberry's assessment of reports against Plaintiff meets this standard. Grinnell had the ability and right under the Policy to investigate Jane Doe's complaint. *See* D. App. 41.

**B. Because Plaintiff concedes that he knowingly participated in the full investigation and adjudication of Jane Doe's allegation of misconduct from a second incident on August 29, 2015, his claim that he didn't receive "notice" of it is superficial.**

Plaintiff argues that his finding of responsibility was erroneous because, with respect to Jane Doe, he was found responsible for two instances of Prohibited Conduct—one from August 28 and the other from August 29—and only "charged" with the August 28 incident. Pl. Br. at 18. It's difficult to discern how this alleged error materially impacted the outcome of his complaint, which is what is required. Plaintiff clearly had notice that the alleged August 29 encounter was being investigated, since he admits that investigators asked him about the August 29 encounter, and that he denied its occurrence. *See* Pl. SAF ¶ 164. The investigatory report, which Plaintiff received and reviewed, identified and described in detail the alleged August 29 incident. *See* P. App. 705-709. Plaintiff's denial that the August 29 incident occurred is clearly flagged in the final report that Justice Ternus received as a "point of disagreement." *Id.* at 712. Justice Ternus ultimately decided Jane Doe's testimony on this point was credible, and provided a rationale for that credibility determination. *Id.* While Plaintiff may disagree with her conclusion and placed emphasis on his denial of its occurrence, it's undisputed that he both knew about the August 29 allegation during the investigation, received the benefit of an investigation into the allegation, was permitted to respond to the investigation of it, and had it adjudicated. There was no fact that casts doubt on the outcome based on this argument, and it does not create a genuine issue of fact.

**C. Justice Ternus's conclusions were accurate and applied the appropriate Policy language to Plaintiff's discipline.**

Plaintiff argues Justice Ternus committed a host of errors in arriving at her decisions. He argues that she applied an incorrect definition of consent to Plaintiff's discipline because she quoted the definition from the Policy that applied in 2016, not 2014. *See* Pl. Br. at 22. No reasonable juror would find that applying the language of the Policy in place at the time of his dicipline casts "articulable doubt" on its outcome. Plaintiff does not explain how the minor difference from the Policy in place in 2014 (which added that "potential policy violations" can arise when a student relies on non-verbal communications) amounted to a "particular procedural flaw affecting proof" before Justice Ternus. *See id.*; Pl. Br. at 22. She found that he had failed to obtain affirmative consent, the definition of which was fundamentally the same in 2014, and "potential policy violations" was not even an issue in his cases. *See* D. App. 223-228; 229-244.

Plaintiff is also critical of the way Justice Ternus interpreted Plaintiff's remarks to her in the adjudication, particularly about his understanding of "consent." Pl. Br. at 23-24. Plaintiff suggests that he, in fact, knew the correct definition of consent at the time of the adjudication, and Justice Ternus misunderstood his remarks and concluded he did not understand it. *See id.* However, Plaintiff admitted in the adjudication that his understanding about consent at the time of his encounter with Jane Doe and Jane Roe was incorrect. *See* Pl. Br. at 23. Clearly, Justice Ternus was within her right under the Policy to conclude that Plaintiff did not understand that definition for purposes of establishing responsibility. *See* P. R. d. SUMF (docket 129) ¶¶ 48-50.

Plaintiff also suggests that Justice Ternus did not consider his statement in the adjudication that since his encounters with Doe and Roe, he had come to understand the definition of consent. *See* Pl. Br. at 23. The plain language of Justice Ternus's recommendation makes clear this is not the case. Justice Ternus's wrote: "Although [Plaintiff] proferred to now understand that should communicate more with sexual partners, his explanation of why he thinks

16

he had consent from [Doe] and [Roe] is troubling." P-APP 1117. In other words, she considered

his new appreciation for "consent" and remained "troubled" by his understanding of it when the

misconduct occurred. *Id.*

And, Plaintiff ignores the evidence that Grinnell had educated all students about its

sexual misconduct policy and expectations, including the definition of affirmative consent, when

his class went through its 2014 orientation. D. App. 129[103:22-104:55]. So, Justice Ternus was

was accurate in concluding that Grinnell's efforts to educate Plaintiff about consent were

unsuccessful prior to the misconduct, since he admits he had failed to grasp the meaning of

affirmative consent before the reported conduct occurred. *See id.* P. R. d. SUMF (docket 129) ¶¶

48-50. Plaintiff may not simply ask the Court to ignore certain evidence and substitute his

interpretation of the evidence for Justice Ternus's. Title IX "does not allow [a] [c]ourt to retry

the University's disciplinary proceeding." *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 755

(quoting *Gomes v. Univ. of Me. Sys.*, 365 F. Supp. 2d 6, 14 (D. Me. 2005)).

Finally, Plaintiff contends Justice Ternus did not apply the "preponderance of the

evidence" standard to his cases. Pl. Br. at 24-25. Plaintiff attempts to support this argument by

arguing that the evidence could be viewed a different way than Justice Ternus interpreted it.

However, Justice Ternus's opinions contain multiple citations to and analysis of the

preponderance standard. *See* D. App 223-228; 229-244. She explains her interpretation of the

evidence thoroughly. There is nothing in her opinions or the cited portions of her deposition

testimony that suggest she departed from the preponderance standard. Plaintiff simply disagrees

the standard was satisfied, which is insufficient. *See Doe v. Univ. of* Denver, 2018 WL 1304530,

at *13 (holding plaintiff's disagreement that "credible evidence" of misconduct existed was

insufficient).

17

**D.  Plaintiff's sanction of dismissal and Moschenross's conduct was not erroneous.**

In challenging his sanction of dismissal, Plaintiff criticizes Moschenross's reliance on Justice Ternus's conclusion that Plaintiff was a safety risk to the community. Pl. Br. 26. Plaintiff asserts that Justice Ternus's concern with campus safety was "grounded in wildly speculative and unsubstantiated statements that Jane Roe made to investigators and which contradicted Doe's and Roe's prior consistent statements." Pl. Br. at 9. Again, Plaintiff misstates the record. The plain language of the opinion reveals the safety concerns Justice Ternus identified were her own—not Doe's. She wrote: "This adjudicator shares that concern [Jane Doe's safety concern] and believes [Plaintiff] poses a risk to the Grinnell College Community." D. App. 246. Plaintiff also argues that Justice Ternus's conclusions about his understanding of consent were incorrect, so Moschenross erred in relying on them. For the same reasons explained above in Section II(C), this argument fails.

Plaintiff also claims Moschenross didn't impose a sanction consistent with prior outcomes, and that he was the first student dismissed for non-consensual sexual intercourse. Pl. Br. at 27. And, the Policy contains no requirement that a sanctioning official compare a student's conduct to others or arrive at a similar sanction for other students. *See* D. App. 48-49. Instead, the Policy requires that educational outcomes be based on other factors: "the severity of the incident; impact on the Complainant; any ongoing risk to either the Complainant or the community posed by Respondent; the impact of the violation on the community . . . ; any previous conduct violation; and any mitigating or aggravating circumstances." D. App. 49. Moschenross's explanation for the sanction was consistent with the Policy. She explained that Justice Ternus's "strong language" and Moschenross's "concern of one of the complainants" for safety, a pattern of predatory behavior, and elevating the safety of the community. *See* Pl.

18

admission at docket no. 129 (at ¶ 129.) And, Moschenross testified that while she didn't recall

evaluating other prior discipline in Plaintiff's case, it was her practice to consult with the Title IX

office on this very issue prior to imposing a sanction. P-APP 644[120:2-4]; 650[143:12-19].

Plaintiff has not generated a disputed issue of fact to cast doubt on the accuracy of his sanction.

Plaintiff is also critical of Moschenross's conduct as the senior official. He argues that

Jane Doe submitted her comments to the investigative report late, and "Moschenross did not flag

her comments for the investigators or request further investigation." Pl. Br. at 19. However, the

Policy does not mandate additional investigation under these circumstances. *See* D. App. 44.

Additional investigation only occurs "as appropriate." *Id.* Plaintiff also fails to point to any

evidence showing this had any impact on the outcome of his discipline. Thus, no reasonable

juror could conclude that Moschenross's conduct was a procedural error that affected the

outcome of his complaint.

### E. No disputed facts cast doubt on the accuracy of the outcome of his appeal.

Plaintiff also contends Grinnell mishandled his appeal. He criticizes Conner for asking

Justice Ternus to comment on the appeal, claiming it was inappropriate because the Policy does

not expressly permit it. Pl. Br. at 28. The salient question, however, is whether the Policy

prohibits it; it doesn't. *See* D. App. 3-52, *passim*. Even if this were inconsistent with the Policy,

the undisputed facts show it had no impact on Conner's decision. She testified that although she

received Justice Ternus's comments, she was focused only on assuring the procedural fairness of

the hearing and "being interested that she did indeed provide two separate opinions and that she

did use her professional discernment to hear each case independently." D. App. 131[111:12-

112:13]. When asked whether she had relied on Justice Ternus's response to determine if the

preponderance of the evidence standard had been satisfied, Conner answered "No." P.

App577[117:6-15]. Conner also testified that she retained her capacity and responsibility to "resist influence" that Justice Ternus could have had over Conner's individual assessment of the case. *Id.* 577[122:6-18]. Finally, even if Ternus had influenced Conner's decision, it's meaningless without evidence that Ternus's decision was both erroneous and sex biased.

Plaintiff also raises the issue again about alleged confusion he claims existed because of the timing of his educational intervention and his understanding of the Policy definition of affirmative consent. Pl. Br. at 29. This argument misses the point. Without evidence to generate an issue of fact about Conner's "honest belief" in Plaintiff's misconduct, Plaintiff cannot defeat summary judgment. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935-936 (8th Cir. 2006) (affirming summary judgment and holding a non-discriminatory reason for adverse action "need not, in the end, be correct if the [decision-maker] honestly believed the [plaintiff] violated the company's code of conduct"). This defeats Plaintiff's argument, since Conner testified that despite any confusion in the timing of Plaintiff's special education about consent, "as it stands, I still feel confident that he, and every student, were educated about the policy, refreshed annually, reminded annually that they needed to be responsible for knowing the policies involving misconduct and consent." D. App. 129[103:-22-104:5]. Conner also testified that "the timing of that educational intervention does not have a ton of impact on my decision at the time, nor on my impressions looking back" and that she "still feel[s] confident that he violated the policy." *Id.* at 129[104:6-20].

Plaintiff's other arguments, such as Conner's statement that a permanent notation on his transcript for misbehavior was "fair," or that Grinnell was "forced to respond" to the circumstances presented to it, Pl. Br. at 27-28, do not identify particular procedural flaws to cast doubt on Conner's reasoned decision to deny his appeal. On these undisputed facts, Plaintiff

cannot generate evidence that shows Conner's appeal was procedurally unsound or it resulted in "flaws affecting the proof" of his responsibility. *Yusuf*, 35 F.3d at 715.

**F.  Plaintiff's miscellaneous arguments are unsupported.**

Plaintiff's other arguments fail. Plaintiff claims he was "denied a right of cross-examination," but no such right existed under the Policy. Plaintiff cites *Doe v. Baum*, 903 F.3d 575, 585 (6th Cir. 2018) as holding the absence of cross-examination is evidence of articulable doubt. Pl. Br. at 20. However, *Baum* applied the Rule 12(b)(6) standard and applied to a public university. *Id.*; *see also Doe v. Belmont Univ.*, 2018 WL 4627033, at *7 (M.D. Tenn. Sept. 27, 2018) (considering *Baum* and explaining distinction between public and private universities).  At this stage, Plaintiff must establish a "particular procedural flaw[] affecting proof." He generates no evidence to show how the absence of cross examination casts doubt on the procedural efficacy of his process. He clearly had a right to weigh in on the evidence presented to the adjudicator.  Finally, Plaintiff criticizes Husch Blackwell because it didn't apply redactions to the investigative report. Pl. Br. at 20-21. However, Plaintiff did not have any right to have any particular information redacted from the report under the Policy. *See* D. App. 43 (stating certain information "may be redacted" by investigators).

**III.  Plaintiff fails to generate a disputed issue of fact that Grinnell breached the Policy.**

In his Complaint, Plaintiff alleged three breach of contract claims. Cmplt. ¶¶ 136-143. In his resistance, he now claims there were seventeen breaches of contract. *See* Pl. Br. at 39-40. At this late stage, he cannot pursue new breach of contract claims. *See WireCo Worldgroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 992 (8th Cir. 2018) (Rule 8(a) does not permit new claims at the summary judgment stage). Plaintiff cannot evade his tardy pleading by

21

characterizing his new breach of contract claims as merely new "grounds" for a breach of contract, either. The Eighth Circuit rejected that argument in *WireCo*. *See id.*

1. **On the timely-pled breach of contract claims, Plaintiff failed to generate a disputed issue of fact showing Grinnell failed to substantially comply with the Policy.**

On the contract claims that Plaintiff did plead, discussed in Defendants' opening brief, Plaintiff failed to generate evidence that shows Grinnell failed to substantially comply with the terms of the Policy. *See Harvey v. Palmer Coll. of Chiropractic*, 363 N.W.2d 443, 445 (Iowa Ct. App. 1984). For the reasons discussed above, Plaintiff's claim that he did not receive the benefit of a "fair and impartial" proceeding due to sex bias (Cmplt. ¶ 139) fails. Plaintiff received the right to meet with investigators, share his version of events, review the evidence collected, meet with the adjudicator and exercise his right to appeal. Plaintiff's claim that Justice Ternus didn't apply the preponderance standard (Cmplt. ¶ 140) fails; Justice Ternus's carefully reasoned opinions cite and apply the preponderance standard. Plaintiff just did not like the outcome. His claim that he did not receive a "hearing" or was deprived of certain procedural protections that would apply in a court of law (such as cross-examination), (Cmplt. ¶ 139), fails because he concedes the Policy did contain those rights. *See* P. SAF ¶¶ 242 & 245. Iowa courts do not infer rights in handbooks that are not expressly granted. *See* Def. opening Br. at 26.

2. **Plaintiff's new breach of contract claims fail because they are either unsupported, or because they don't show a failure to substantially comply.**

Even if Plaintiff's new breach of contract claims could proceed, they fail. Section II of this brief addresses the new breach of contract issues alleged in paragraphs (iii), (vi), (xiv), and (xvii) of his brief. For the reasons explained above, Grinnell did not depart from the Policy with respect to this conduct.

In Plaintiff's additional new contract claims, his complaints amount to an insistence upon perfect performance rather than a failure to substantially comply with the Policy. For example, Plaintiff argues that Jane Doe had more than one support person present at a meeting with investigators, Pl. Br. 40 ¶ (x), and that Grinnell gave Jane Doe flexibility on the timing of her adjudication and impact statement (*id.* ¶¶ (xii) and (xiii). This fails to demonstrate that Grinnell didn't "substantially perform" under the Policy.  The substantial performance concept "excuses contractual deviations or deficiencies which do not severely impair the purpose underlying a contractual provision." *SDG Macerich Prop., L.P. v. Stanek Inc.*, 648 N.W.2d 581, 586 (Iowa 2002).  Stated another way, a party does not need to prove perfect performance, only that it substantially performed. *See PRO Comm. LLC v. Mallory Fire Prot. Servs., Inc.*, 2016 WL 7395728, at *6 (Iowa Ct. App. Dec. 21, 2016) (citation omitted). Plaintiff also complains about the sufficiency of Moschenross's involvement in the decision to convert Jane Doe's report to formal discipline or consolidate it with Roe's (*id.* ¶ (iv), (v), (vii) and (viii).[6] Yet, he fails to argue or introduce evidence showing the level of Moschenross's involvement had any impact on the decision that Grinnell made, since Moschenross supported it, and cannot argue that it affected Grinnell's performance or severely impacted the outcome of his discipline. His complaints about the absence of a pre-adjudication meeting (xi) and Ternus not meeting with investigators (xii) fails to generate an issue of fact on the same point. *See SDG Macerich*, 648 N.W.2d at 586. None of the alleged errors frustrated the purpose of his disciplinary process—to investigate and adjudicate the claims of misconduct—or Plaintiff's protections under that Policy. His breach of contract claims, new and old, fail.

---

[6] Additionally, Plaintiff's fact citations on this issue are unsupported. *See* D. Resp. to Pl. SAF ¶¶ 103-105.

### 3.   The good faith and fair dealing argument is not proper or actionable.

Like he attempts to do with the lion's share of his breach of contract claims, Plaintiff

raises new claims for breach of the covenant of good faith and fair dealing in his resistance,

which is prohibited at this late stage. *See WireCo.*, 897 F.3d at 992. In his new claims, Plaintiff

essentially argues that, because the Policy did not expressly permit Grinnell to take certain action

(such as Conner communicating with Moschenross and Ternus about the appeal), it was

forbidden. That's not the law. To prove a breach of contract claim, a plaintiff must show

evidence of a breach of the contract in some particular way. *See Iowa Arboretum, Inc. v. Iowa 4-*

*H Foundation*, 886 N.W.2d 695, 706 (Iowa 2016). Conduct that did not violate the Policy does

not amount to breach. More to the point, it doesn't amount to a breach of the covenant of good

faith and fair dealing, which is meant to "give the parties what they would have stipulated for at

the time of contracting if they could have foreseen all future problems of performance." *Am.*

*Tower, L.P. v. Local TV Iowa, LLC*, 809 N.W.2d 546, 550 (Iowa Ct. App. 2011) (citation

omitted). The Policy provided Plaintiff with a detailed description of the disciplinary process and

advised him of the consequences of misconduct. Plaintiff failed to generate evidence that

Defendants failed to substantially comply with this obligation.

## IV.   Plaintiff's estoppel and reliance claims should be dismissed.

Again, Plaintiff attempts to drum up new claims for estoppel and reliance that were not

alleged in the Complaint, such as the sufficiency of the notice of investigation about Jane Doe's

reports, his struggle scheduling an appointment with student health services, and Justice Ternus's

statement that she wasn't trying to test his memory. Plaintiff appears to have abandoned the

claim he initially alleged about the sufficiency of representations about his procedural rights.

Even if these late alleged claims were actionable, none of this conduct demonstrates an issue of

fact that meets the prima facie elements of an estoppel claim—he fails to show they were a "promise," that Plaintiff relied on to his detriment. *See* Def. Opening br. at 28-29.

**V.     Plaintiff failed to generate a disputed issue of fact that the statements made at his November 2015 meeting were false.**

Finally, Plaintiff failed to generate evidence that shows the statements made to him in the November 2015 meeting were false. All the statements identified in Plaintiff's brief, pp. 43-44, were true—namely, that Grinnell wasn't pursuing formal discipline at that time. That is, Plaintiff does not cite any representation by Voos or Asberry stating that the informal resolution was "final." *See id.* Instead, Plaintiff points out that he and his mother "understood Voos' statements to mean that the informal resolution was final[.]" *Id.* Plaintiff's mere belief and understanding is insufficient to generate evidence that Voos or Asberry actually made any misrepresentation. Additionally, Plaintiff fails to address the Iowa authority discussed in Defendants' opening brief that statements of future intent, such as intent to proceed or not to proceed later with discipline, is not actionable as negligent misrepresentation. *See* Opening Br. at 29. He also appears to concede that he's barred from recovering damages other than economic damages for this claims. *See id.* This claim may be dismissed.

### Conclusion

For these reasons and the reasons stated in Defendants' opening brief, summary judgment is appropriate on Plaintiff's remaining claims.

/s/  Frank Boyd Harty
Frank Boyd Harty
Nyemaster Goode, P.C.
700 Walnut Street, Suite 1600

25

Des Moines, Iowa 50309
Telephone: 515-283-3100
Facsimile: 515-283-8045
Email: fharty@nyemaster.com

and

/s/ Frances M. Haas
Frances M. Haas
Nyemaster Goode, P.C.
625 First Street SE, Suite 400
Cedar Rapids, Iowa  52401
Telephone:  319-286-7000
Facsimile:  319-286-7050
Email:  fmhaas@nyemaster.com

ATTORNEYS FOR DEFENDANTS GRINNELL
COLLEGE, SARAH MOSCHENCROSS,
ANGELA VOOS, AND BAILEY ASBERRY

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2018 I electronically filed the foregoing document with the Clerk of Court using the ECF system which will send notification of such filing to the following:

David H. Goldman, Esq.
Phillip F. Van Liew, Esq.
BABICH GOLDMAN, P.C.
501 S.W. 7th Street, Suite J
Des Moines, Iowa  50309
Telephone:  (515) 244-4300
Email: dgoldman@babichgoldman.com
Email: pvanliew@babichgoldman.com

        -AND-
Andrew T. Miltenberg, Esq. (*pro hac vice*)
Tara J. Davis, Esq. (*pro hac vice*)
Kara L. Gorycki, Esq. (*pro hac vice*)
Philip Byler, Esq. *(pro hac vice)*

NESNOFF & MILTENBERG, LLP
363 Seventh Avenue, Fifth Floor
New York, New York 10001
Telephone: (212) 736-4500
Email: AMiltenberg@nmllplaw.com
Email: tdavis@nmllplaw.com
Email: kgorycki@nmllplaw.com
Email: pbyler@nmllplaw.com

ATTORNEYS FOR PLAINTIFF JOHN DOE

/s/  Frances M. Haas