IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>      Plaintiff,<br><br>v.<br><br>GRINNELL COLLEGE, SARAH MOSCHENROSS, ANGELA VOOS, and BAILEY ASBERRY,<br><br>      Defendants. | **No. 4:17-cv-00079-RGE-SBJ**<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I.    INTRODUCTION

John Doe was a student at Grinnell College when, during his sophomore year, a fellow student reported Doe had engaged in nonconsensual sexual contact with her. Several months later, another student reported Doe had nonconsensual sexual intercourse with her. Grinnell eventually investigated both reports, found Doe responsible for sexual misconduct, and dismissed Doe from Grinnell.

Doe claims Grinnell and Grinnell employees discriminated against him on the basis of sex during the disciplinary proceeding that led to his dismissal. He also claims various aspects of the proceedings violated Grinnell's policies and promises made to him by Grinnell employees. Doe has sued Defendants Grinnell College, Grinnell's former Dean of Students Sarah Moschenross, Grinnell's former Title IX Coordinator Angela Voos, and Grinnell's former Title IX Deputy for Case Management Bailey Asberry, alleging violations of Title IX of the Education Amendments of 1972, breach of contract, promissory estoppel, and negligent misrepresentation. Defendants move for summary judgment on all of Doe's claims.

The Court holds Doe has demonstrated a genuine dispute of material fact as to whether

gender bias was a motivating factor that caused an inaccuracy in his sexual misconduct disciplinary proceeding. The Court also concludes there is a dispute of material fact regarding whether Grinnell substantially performed its contract with Doe. The Court thus denies Defendants' motion for summary judgment on Doe's Title IX and breach of contract claims. As for Doe's promissory estoppel and negligent misrepresentation claims, the Court concludes there are no material facts in dispute and these claims fail as a matter of law. The Court thus grants Defendants' motion for summary judgment on Doe's estoppel and negligent misrepresentation claims.

## II.   BACKGROUND

### A.   Factual Background

In presenting the facts relevant to the Defendants' motion for summary judgment, the Court first outlines the social climate at Grinnell at the time Doe was accused of sexual misconduct. Next, the Court sets forth Grinnell's sexual misconduct policy. The Court then recounts the sexual misconduct complaints brought against Doe and the subsequent disciplinary process that resulted in his dismissal. The following facts are either uncontested or, if contested, viewed in the light most favorable to Doe. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587−88 (1986).

#### 1.   Campus climate

Doe enrolled at Grinnell College in the fall of 2014. Pl.'s Br. Supp. Resp. Defs.' Mot. Summ. J. 3, ECF No. 129-1. In late 2014 and early 2015, a Grinnell student group called Dissenting Voices advocated for reform of Grinnell's process for handling complaints filed under Title IX, which prohibits discrimination on the basis of sex at educational institutions. Defs.' Unsealed Resp. Pl.'s Statement Add'l Facts Resp. Defs.' Mot. Summ. J. ¶¶ 16, 19, 23–33, 36, 38, 40–41, ECF No. 136; Pl.'s Unsealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 161–69, ECF No. 129-5; *see also* 20 U.S.C. § 1681(a). The focus of Dissenting Voices's

criticism was the treatment by Grinnell of alleged victims of sexual assault. Among other forms of activism, Dissenting Voices wrote opinion pieces in Grinnell's student newspaper calling upon Grinnell's administrators to make Grinnell a place "where sexual assault is taken seriously" and to more proportionally punish "students who commit violent sexual assaults." *See, e.g.*, Pl.'s Unsealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 170–79, ECF Nos. 129-5 & 129-6; *see also* ECF No. 136 ¶ 31–33, 36, 38–41.

In March 2015, *The Huffington Post* published an article criticizing Grinnell's handling of Title IX complaints. ECF No. 136 ¶ 49; ECF No. 129-5 at P-APP 127–36. Shortly before *The Huffington Post* piece was published, Grinnell President Raynard Kington contacted the Office for Civil Rights at the U.S. Department of Education and asked for assistance in reforming Grinnell's Title IX process. ECF No. 136 ¶ 48; ECF No. 129-6 at P-APP 182–83. That same month, Kington cancelled an interview with *U.S. News and World Report*, citing reservations about speaking publicly at that time. ECF No. 136 ¶ 55; Pl.'s Sealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 609, ECF No. 131-3. The Office of Civil Rights denied Kington's request for assistance. Pl.'s Sealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 485, Voos Dep. 75:25–76:4, ECF No. 131-2. Several months later, the Office of Civil Rights opened an investigation of Grinnell based on complaints from Grinnell students. ECF No. 136 ¶ 66; ECF 129-6 at P-APP 189–95. The case against Grinnell was eventually resolved and the students withdrew their complaints. Defs.' Sealed Resp. Pl.'s Statement Add'l Facts Resp. Defs.' Mot. Summ. J. ¶¶ 73–74, ECF No. 140-1; Pl.'s Sealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 1685–86, ECF No. 131-19.

## 2.  Grinnell's Sexual Misconduct Policy

Three different versions of Grinnell's Sexual Misconduct Policy applied at different times while Doe was a student at Grinnell. Pl.'s Resp. Defs.' Statement Undisputed Facts Supp.

Defs.' Mot. Summ. J. ¶¶ 65–67, ECF No. 129. One version of the policy was in place in 2014, another version was in place in 2015, and a third version was in place in 2016. *Id.*; *see* Pl.'s Unsealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 49–120, ECF Nos. 129-4 to 129-5 (the 2014 policy); Pl.'s Unsealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 236–85, ECF Nos. 129-6 to 129-7 (the 2016 policy). [1] Events relevant to Doe's claims occurred during times when each of these versions of the sexual misconduct policy applied.

Grinnell generally made changes to the sexual misconduct policy during the summer, between academic years. *See* Voos Dep. 21:2–5, ECF No. 131-2 at P-APP 477.2. However, in February 2015—at the time Dissenting Voices was advocating for reform—Grinnell updated its policy during the academic year. ECF No. 136 ¶¶ 34–35; *see also* ECF No. 129-5 at P-APP 141–44; ECF No. 129-7 at P-APP 347–49. Notably, Grinnell shifted from the use of "hearing boards" in adjudicating complaints to using an "external adjudicator." *Compare* ECF No. 129-4 at P-APP 95–98, *with* ECF No. 129-7 at P-APP 278–82. From 2014 to 2016, however, the definitions of sexual assault, nonconsensual sexual contact, nonconsensual sexual intercourse, consent, and coercion remained identical or substantively the same. ECF No. 129 ¶ 67; *compare* ECF No. 129-4 at P-APP 61, 63–64, *with* ECF No. 129-7 at P-APP 249, 251–52. The 2016 sexual misconduct policy governed Doe's disciplinary proceeding and thus is most relevant here. The Court will refer to the 2016 sexual misconduct policy as "the Policy" throughout.

The Policy defines sexual assault as "having or attempting to have sexual intercourse or sexual contact with another individual without consent." ECF No. 129-7 at P-APP 249.

---

[1] The parties do not submit a copy of the policy in place in 2015 in their appendices. However, Doe provides a document summarizing the differences between the 2014 and 2015 policies. *See* ECF No. 129-7 at P-APP 347–49.

Nonconsensual sexual contact is defined as "[h]aving or attempting to have sexual contact with another individual without consent." *Id.* Similarly, nonconsensual sexual intercourse is defined as "[h]aving or attempting to have sexual intercourse with another individual without consent." *Id.* The Policy includes the following definition of consent:

> Consent to engage in sexual activity must be given knowingly, voluntarily, and affirmatively. Consent to engage in sexual activity must exist from the beginning to end of each instance of sexual activity and for each form of sexual contact. Consent is demonstrated through mutually understandable words and/or clear, unambiguous actions that indicate a willingness to engage freely in sexual activity. Consent is active, not passive. . . . Consent to one form of sexual contact does not constitute consent to engage in all forms of sexual contact. Consent consists of an outward demonstration indicating that an individual has freely chosen to engage in sexual activity. . . . Consent may not be inferred from silence, passivity, lack of resistance, or lack of an active response alone. A person who does not physically resist or verbally refuse sexual activity is not necessarily giving consent. . . . Consent may be withdrawn by either party at any time. Withdrawal of consent must also be outwardly demonstrated by mutually understandable words or clear, unambiguous actions that indicate a desire to end sexual activity. Once withdrawal of consent has been expressed, sexual activity must cease. . . . Consent is not affirmative if it results from the use of threat of physical force, intimidation, or coercion, or any other factor that would eliminate an individual's ability to exercise his/her/hir [ ] own free will to choose whether or not to have sexual contact.

*Id.* at P-APP 251–52. It also includes the following definition of coercion:

> Coercion is direct or implied threat of force, violence, danger, hardship, or retribution sufficient to persuade a reasonable person of ordinary susceptibility to perform an act which otherwise would not have been performed or acquiesce in an act to which one would not have submitted. Coercion can include unreasonable and sustained pressure for sexual activity. Coercive behavior differs from seductive behavior based on the type of pressure someone uses to get consent from another. A person's words or conduct cannot amount to coercion unless they wrongfully impair the other's freedom of will and ability to choose whether or not to engage in sexual activity. When someone makes it clear that he/she/zi does not want to engage in sexual activity, that he/she/zi wants to stop, or that he/she/zi does not want to go past a certain point of sexual interaction, continued pressure beyond that point can be coercive.

*Id.* at P-APP 253.

The Policy outlines how complainants can report sexual misconduct. *Id.* at P-APP 260–61. There is no time limit for reporting sexual misconduct. *Id.* at P-APP 263. The Policy provides two ways to resolve complaints: informal resolution and formal resolution. *Id.* at P-APP 272–85. Informal resolution culminates in non-disciplinary action for the respondent, such as training or an educational program. *Id.* at P-APP 272–74. Under the Policy, an informal resolution can serve as a "final resolution" of a complaint when there is an agreement between Grinnell, the complainant, and the respondent. *Id.* at P-APP 273. Title IX Coordinator Voos stated in her deposition the informal resolution agreement must be in writing; but the Policy does not include such a requirement. Defs.' Sealed App. Supp. Defs.' Mot. Summ. J. at DEF APP 70, Voos Dep. 11:17–20, ECF No. 99; Defs.' Unsealed App. Supp. Defs.' Mot. Summ. J. at DEF APP 295, Voos Decl. ¶¶ 2–3, ECF No. 94-2. Formal resolution involves an investigation and adjudication. ECF No. 129-7 at P-APP 274–83. Formal resolution may result in disciplinary sanctions—described by the Policy as "educational outcomes"—against a respondent, including dismissal. *Id.* at P-APP 281–82. Grinnell's Title IX Office considers certain factors in deciding if a complaint should be handled formally or informally. These factors include the interest and preference of the complainant; the seriousness, persistence, or pervasiveness of the alleged conduct; and whether there have been multiple reports of misconduct against the respondent. *Id.* at P-APP 268–69.

Grinnell will pursue a formal resolution when the complainant requests one, when an investigation is warranted based on the Title IX Office's assessment, or when informal resolution is not successful. *Id.* at P-APP 274. The first step of a formal resolution is a fact-finding investigation. The Title IX Coordinator engages either a Grinnell employee or an external investigator to interview the parties and review the relevant documents. *Id.* at P-APP 275–76. The investigator is charged with fact-finding but is not charged with weighing the evidence or

determining whether the respondent is responsible for violating the Policy. *Id.* at P-APP 275, 277. The investigator writes an investigation report outlining the findings and incorporates comments from both parties into the report. *Id.* at P-APP 277.

The investigation report is then reviewed by an adjudicator. *Id.* at P-APP 278. Grinnell may engage an external adjudicator—"an outside individual or firm" that "posses[es] the requisite training and experience needed to competently and fairly adjudicate the matter, and [who] will be free from actual bias or conflict of interest"—to review the investigation report and adjudicate the case. *Id.* at P-APP 279. An external adjudicator is typically a retired judge "trained in the intricacies of Title IX." *Id.* The adjudicator holds three separate, private, non-adversarial meetings with the investigation team, the complainant, and the respondent. *Id.* at P-APP 280–81. The adjudicator first meets with a representative of the investigation team and asks any questions necessary to gain a greater understanding of the case. *Id.* at P-APP 280. The adjudicator then meets with the complainant and the complainant's support person. *Id.* The complainant may present an account of the events and the adjudicator may ask questions. *Id.* The complainant may also bring an impact statement to the meeting and may recommend appropriate sanctions for the respondent. *Id.* The adjudicator then meets with the respondent and the respondent's support person. *Id.* At the meeting, the adjudicator asks the respondent if the respondent pleads "responsible" or "not responsible" and asks the respondent to respond to the charges in a narrative form. *Id.* The adjudicator may ask the respondent questions. *Id.* The respondent may also bring a mitigation statement and may suggest an appropriate sanction. *Id.* at P-APP at 280–81.[2]

After the adjudication meetings, the adjudicator deliberates privately, reviews all

---

[2] Defendants contend the Policy permits the respondent or complainant to submit questions for the external adjudicator to ask during the individual meetings. *See* ECF No. 136 ¶¶ 241–242. The Policy does not provide for such a process. *See* ECF No. 129-7 at P-APP 280–81.

information presented by the parties, and issues a written decision determining whether the respondent is responsible for the alleged sexual misconduct based on a preponderance of the evidence. *Id.* at P-APP 281. If the respondent is found responsible, the adjudicator recommends appropriate educational outcomes to the Dean of Students. *Id.* at P-APP at 281–82. The Dean of Students has the authority to impose an educational outcome and "may broaden or lessen any range of recommended education outcomes in the case of serious mitigating circumstances, contextual or historical aggravating circumstances, or egregiously offensive behavior." *Id.*

The Policy also provides for an appeal process. *Id.* at P-APP 283–84. A party may appeal the determination of the respondent's responsibility and the imposition of the educational outcome on only two grounds: the discovery of new evidence or procedural error. *Id.* at P-APP 283. The party's appeal must consist of a "plain, concise, and complete written statement expounding on the grounds for the appeal." *Id.* at P-APP 284. The Title IX Coordinator first decides whether to accept or deny the appeal. *Id.* If the appeal is accepted, a designated appeals officer evaluates the appeal. *Id.* The appeals officer must be an "impartial decision-maker." *Id.* If the designated appeals officer "was consulted about the conduct at issue in the complaint/grievance," the Title IX Coordinator must designate a different senior official as the appeals officer. *Id.* If a party believes the appeals officer has actual bias or a conflict of interest, the party may raise that challenge in writing within two days after the Title IX Coordinator accepts the appeal. *Id.* The appeals officer does not conduct a de novo review of the evidence considered or the conclusions reached in the determination of responsibility. *Id.* Instead, the appeals officer considers the appeal based solely on the two permissible grounds for appeal—new evidence or procedural error. *Id.* The appeals officer "can affirm the original findings, alter the findings, and/or alter the educational outcomes." *Id.* Appeal decisions are final. *Id.*

### 3.   Doe's sexual misconduct disciplinary process

In November 2015, a Grinnell employee informed the Title IX Office that a student reported Grinnell sophomore John Doe had engaged in nonconsensual sexual contact with her about one year prior. ECF No. 129 ¶ 71; *see* ECF No. 131-19 at P-APP 1751. The student, Complainant #1,[3] met with Asberry,[4] Grinnell's Title IX Deputy Coordinator, and told her she did not want to pursue a formal resolution against Doe—she was only concerned Doe might attend her study abroad program. *See* ECF No. 131-2 at P-APP 535–36 (Asberry's notes documenting her meeting with Complainant #1). Voos determined it would be appropriate to resolve the complaint informally and to have an educational meeting with Doe to discuss the meaning of consent. ECF No. 129 ¶ 74; Voos Dep. 123:10–13, ECF No. 99 at DEF APP 87. Voos and Asberry met with Doe later that week. ECF No. 129 ¶ 76; *see* ECF No. 131-2 at P-APP 537. During the meeting, Voos and Asberry discussed with Doe the meaning of affirmative consent. ECF No. 129 ¶ 79; *see* Doe Dep. 131:11–15, ECF No. 99 at DEF APP 64. After the meeting, Doe understood Grinnell would not be moving forward with a formal resolution of Complainant #1's complaint at that time. ECF No. 129 ¶ 80; Doe Dep. 150:16–22, ECF No. 99 at DEF APP 67.

In February 2016, a different Grinnell employee notified Asberry that a student, Complainant #2,[5] had expressed concern about studying abroad with Doe. ECF No. 129 ¶ 86; *see* ECF No. 131-19 at P-APP 1756. Asberry met with Complainant #2 to discuss her concerns. ECF No. 129 ¶ 87; Asberry Dep. 111:11–19, ECF No. 131-3 at P-APP 521; *see* ECF No. 131-3 at P-APP 548. Complainant #2 told Asberry Doe had engaged in sexual intercourse with her

---

[3] The parties use the pseudonym Jane Doe for this student. The Court will refer to her as Complainant #1 to avoid confusion with Plaintiff's pseudonym.

[4] Defendant Bailey Asberry was known as Bailey Thompson at this time and at the times relevant to Doe's complaint. Asberry Dep. 6:10–16, ECF No. 131-2 at P-APP 508.

[5] The parties refer to this student as Jane Roe. The Court will refer to her as Complainant #2 for consistency.

without asking for her consent in the summer of 2015. ECF No. 129 ¶ 88; ECF No. 131-2 at P-APP 546.

In March 2016, after Asberry's meeting with Complainant #2, Voos and Asberry consulted legal counsel and decided to open a formal investigation against Doe. ECF No. 129 ¶ 90; Asberry Dep., 119:21–120:4, 121:17–24, ECF No. 99 at DEF APP 109, 110; Voos Dep. 142:12–143:9, ECF No. 99 at DEF APP 91. Grinnell retained the law firm Husch Blackwell to begin the formal investigation in accordance with the Policy. *See* ECF No. 131-2 at P-APP 546. The investigators interviewed Complainant #1 in March 2016. Pl.'s Sealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 701, 752–70, ECF Nos. 131-5 to 131-6. During her interview, Complainant #1 told the investigators Doe engaged in nonconsensual sexual contact with her on two days in 2014. ECF No. 131-5 at P-APP 754–56. Grinnell then sent a Notice of Investigation to Doe on April 13, 2016, informing him Grinnell was moving forward with a formal resolution of Complainant #1's and Complainant #2's complaints. Pl.'s Sealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 673, ECF No. 131-4. Dean of Students Moschenross, Voos, and Asberry met with Doe the next day to explain the formal resolution process. *See* ECF No. 131-3 at P-APP 561–64.

Complainant #2 initially told Asberry she did not want to speak with the investigators, but after Voos told her Grinnell was moving forward with a formal resolution, Complainant #2 agreed to meet with them. *Id.* at P-APP 553. Investigators interviewed Complainant #2 in April 2016. Pl.'s Sealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 801–29, ECF No. 131-6 to 131-7. The same day, the investigators interviewed Complainant #1 a second time. ECF Nos. 131-5 to 131-6 at P-APP 772–799.

The investigators also interviewed Doe in April 2016. ECF No. 131-7 at P-APP 831–58. During his interview, Doe told investigators he remembered little about the first encounter

with Complainant #1 and denied the second encounter with Complainant #1 occurred. *Id.* at P-APP 833–34, 838. In regard to the encounter with Complainant #2, Doe denied the sexual intercourse was nonconsensual. ECF No. 131-5 at P-APP 722.

In May 2016, the investigators conducted follow-up interviews with Doe and Complainant #2. Pl.'s Sealed App. Supp. Resp. Defs' Mot. Summ. J. at P-APP 907–33, ECF No. 131-9. The investigators also interviewed four student witnesses and reviewed text messages and emails submitted by the parties and witnesses. *See* ECF No. 131-5 at P-APP 701; Pl.'s Sealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 860–905, ECF Nos. 131-7 to 131-9.

The investigators produced a 51-page final investigation report summarizing the facts gathered about Complainant #1's and Complainant #2's complaints. ECF No. 131-5 at P-APP 700–50. The investigators appended to the report transcripts of interviews with the parties and witnesses, as well as other documents related to the investigation. Pl.'s Sealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 751–1020, ECF Nos. 131-5 to 131-10. The investigators also included comments submitted by the parties responding to a preliminary version of the report. ECF No. 131-10 at P-APP 1021–25.

Grinnell submitted the final investigation report to the designated external adjudicator, former Chief Justice of the Iowa Supreme Court Marsha Ternus ("the Adjudicator"). ECF No. 129 ¶¶ 42, 105. The Adjudicator did not meet with the investigation team. *See* Norton Dep. 46:3–6, ECF No. 131-5 at P-APP 696. The Adjudicator reviewed the investigation report and conducted adjudication meetings with Complainant #1 and Doe. Pl.'s Sealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 1073, Ternus Dep. 57:13–23, ECF No. 131-11. Complainant #2 declined to have an adjudication meeting with the Adjudicator. ECF No. 129 ¶ 106.

The Adjudicator issued separate findings for each complaint against Doe. ECF No. 129 ¶ 110; *see* ECF No. 131-11 at P-APP 1102–07; Pl.'s Sealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 1108–15, ECF No. 131-12. The Adjudicator found Doe responsible for nonconsensual sexual contact with Complainant #1. ECF No. 129 ¶ 111; ECF No. 131-11 at P-APP 1106–07. The Adjudicator also found Doe responsible for nonconsensual sexual intercourse with Complainant #2. ECF No. 129 ¶ 116; ECF No. 131-12 at P-APP 1113–15.

In a separate decision, the Adjudicator recommended Doe's educational outcome: dismissal from Grinnell. ECF No. 129 ¶¶ 121–122; ECF No. 131-12 at P-APP 1116–18. The Adjudicator found dismissal was appropriate considering Doe's "responsibility for engaging in nonconsensual sexual intercourse with [Complainant #2] and based upon a predatory pattern of behavior that these two complaints demonstrate." ECF No. 131-12 at P-APP 1117. The Adjudicator provided a caveat with the recommended sanction: that it "be consistent with the sanctions imposed in similar cases." *Id.* at P-APP 1117–18. Moschenross accepted the Adjudicator's recommendation and finalized the decision to dismiss Doe. ECF No. 129 ¶ 128; *see* ECF No. 131-4 at P-APP 685–87.

Doe appealed Grinnell's determination of his responsibility and his dismissal, asserting, among other claims of error, the Adjudicator failed to apply the preponderance of the evidence standard and that it was procedurally improper to consolidate the complaints of Complainant #1 and Complainant #2 into one investigation. *See* ECF No. 131-19 at P-APP 1701–03. As dictated by the Policy, Andrea Conner, the Assistant Vice President for Student Affairs, served as the appeals officer. *See* ECF No. 129-7 at P-APP 284. During Conner's review, Conner asked the Adjudicator to provide comments on the findings. ECF No. 131-3 at P-APP 592. The Adjudicator responded with several pages of written comments supporting the conclusions in the determinations of responsibility. *Id.* at P-APP 588–91. The Policy does not permit the

review of an appeal by anyone other than the appeals officer. Doe was not made aware of these communications or given the opportunity to respond to the Adjudicator's comments. ECF No. 136 ¶ 333. Conner ultimately denied Doe's appeal, finding no evidence of a procedural error in the disciplinary process. ECF No. 131-3 at P-APP 598–602.

Additional facts are provided below as necessary.

### B.    Procedural Background

Doe filed suit in March 2017 against Grinnell College, Raynard Kington, Sarah Moschenross, Angela Voos, Andrea Conner, Bailey Asberry, Marsha Ternus, and Husch Blackwell, LLP. ECF No. 1. Doe alleged five counts: violation of the due process clause of the Fourteenth Amendment of the United States Constitution against Grinnell (Count I); violation of Title IX of the Education Amendments of 1972 against all Defendants (Count II); breach of contract against Grinnell (Count III); estoppel and reliance against Grinnell (Count IV); and negligent misrepresentation against Grinnell, Moschenross, Voos, and Asberry (Count V). *Id.* ¶¶ 84–155.

In June 2017, Doe voluntarily dismissed Ternus and Husch Blackwell. Stipulation Dismissal, ECF Nos. 31 & 32. In September 2017, the Court dismissed Doe's constitutional claim, Count I, on Defendants' partial motion to dismiss, finding Doe did not plead sufficient facts to show Grinnell should be deemed a governmental actor. Order Granting Defs.' Partial Mot. Dismiss 4–5, ECF No. 46. The Court also dismissed Doe's Title IX claim, Count II, against the remaining individual Defendants after Doe conceded individuals cannot be liable under Title IX. *Id.* at 2. Kington and Conner were thus dismissed from the case. *Id.* at 6.

Defendants now move for summary judgment on Doe's remaining claims: Doe's Title IX claim under an erroneous outcome theory against Grinnell (Count II), his state law breach of contract and estoppel claims against Grinnell (Counts III and IV), and his state law negligent

misrepresentation claim against Grinnell, Moschenross, Voos, and Asberry (Count V). ECF No. 94; *see also* Defs.' Br. Supp. Defs.' Mot. Summ. J., ECF No. 100. Doe resists. ECF No. 129; *see also* ECF No. 129-1. Defendants have replied. ECF No. 141. This matter came before the Court for hearing on February 7, 2019. Mot. Summ. J. Hr'g Mins., ECF No. 147; Mot. Summ. J. Hr'g Tr., ECF No. 149. Attorneys Kara Gorycki and David Goldman represented Doe. ECF No. 147. Attorneys Frances Haas and Frank Harty represented Defendants. *Id.*

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the Court must grant a party's motion for summary judgment if there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). Partial summary judgment is also permissible. *See* Fed. R. Civ. P. 56(a) (allowing summary judgment for "the part of each claim or defense"). A genuine issue of material fact exists where a factual issue capable of sustaining a claim under the governing law "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Where there is a genuine dispute, the "facts must be viewed in the light most favorable to the nonmoving party." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

To defeat a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (omission in original) (quoting a prior version of Fed. R. Civ. P. 56(e)). In analyzing whether a party is entitled to summary judgment, a court "may consider only the portion of the submitted materials that is admissible or useable at

trial." *Moore v. Indehar*, 514 F.3d 756, 758 (8th Cir. 2008) (quoting *Walker v. Wayne Cty.*, 850 F.2d 433, 434 (8th Cir. 1988)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and the moving party is entitled to summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (quoting *Ricci*, 557 U.S. at 586).

## IV.   DISCUSSION

The Court first considers Doe's Title IX claim (Count II) against Grinnell. The Court concludes Doe has demonstrated a genuine dispute of material fact regarding whether gender bias was a motivating factor in Doe's dismissal. A reasonable jury could therefore find Grinnell discriminated against Doe on the basis of sex in violation of Title IX. The Court thus denies Defendants' motion for summary judgment on Count II. The Court next considers Doe's breach of contract claim (Count III) against Grinnell. Because determining this claim also implicates factual issues that must be resolved by a jury, the Court denies Defendants' motion for summary judgment on Count III. The Court then addresses Doe's estoppel claim against Grinnell and negligent misrepresentation claim against Grinnell, Moschenross, Voos, and Asberry (Counts IV and V). The Court concludes Doe has not set forth material facts demonstrating a genuine dispute as to these claims and Defendants are entitled to judgment as a matter of law. The Court therefore grants Defendants' motion for summary judgment on Counts IV and V. Accordingly, Moschenross, Voos, and Asberry are dismissed.

### A.   Title IX Erroneous Outcome Claim (Count II)

District courts in this Circuit have followed the Second Circuit's decision in *Yusuf v. Vassar College* as a framework to resolve Title IX sex discrimination claims. 35 F.3d 709 (2d Cir. 1994). "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf*, 35 F.3d at 715; *accord Rossley v. Drake Univ.*,

342 F. Supp. 3d 904, 924 (S.D. Iowa 2018); *Doe v. St. John's Univ.*, No. 17–2413 (PAM/LIB), 2017 WL 4863066, at *2 (D. Minn. Oct. 26. 2017); *Stenzel v. Peterson*, No. 17-580 (JRT/LIB), 2017 WL 4081897, at *4 (D. Minn. Sept. 13, 2017). Among other types of sex discrimination that can be brought under Title IX, a student can challenge an educational institution's disciplinary proceedings under an erroneous outcome theory by alleging "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F.3d at 715.

To succeed on a Title IX claim under an erroneous outcome theory, a plaintiff must demonstrate: 1) articulable doubt as to the accuracy of the outcome of the disciplinary proceeding, and 2) gender bias was a motivating factor behind the erroneous finding. *Doe v. Miami Univ.*, 882 F.3d 579, 592 (6th Cir. 2018). To demonstrate an articulable doubt as to the accuracy of the outcome of a disciplinary proceeding, a plaintiff "must demonstrate evidentiary weaknesses behind the finding of the offense such as a motive to lie, particular strengths of the defense, or procedural flaws affecting the record." *Doe v. Univ. of Arkansas-Fayetteville*, No. 5:18-cv-05182, 2019 WL 1493701, at *12 (W.D. Ark. Apr. 3, 2019); *see also Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 584 (E.D. Va. 2018) (noting a plaintiff can show an articulable doubt as to the outcome of the disciplinary proceeding by "challenging the overall sufficiency and reliability of the evidence").

In addition to demonstrating an articulable doubt in the outcome of the proceeding, the plaintiff must show "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf*, 35 F.3d at 715; *accord Rossley*, 342 F. Supp. 3d at 924. Such circumstances may include "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Yusuf*, 35 F.3d at 715. However, "[a]s a general rule, Title IX is not

an invitation for courts to second-guess disciplinary decisions of colleges or universities." *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 989 (D. Minn. 2017). Title IX should be construed to give educational institutions the "flexibility they require to initiate a reasonable disciplinary response." *Id.* at 990 (internal quotations marks omitted) (quoting *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648–49 (1999)).

Thus, to avoid summary judgment, Doe must show a that a reasonable jury could conclude: 1) there is articulable doubt regarding the accuracy of Doe's disciplinary proceeding; and 2) gender bias was a motivating factor that caused the inaccuracy. Doe has successfully demonstrated a genuine dispute of material fact on both prongs of his erroneous outcome claim.

### 1. Accuracy of the outcome

As to the first prong, the Court concludes Doe proffers sufficient facts that cast doubt on the accuracy of the outcome of his disciplinary process. Broadly, Doe argues Grinnell "did not handle [Doe's] discipline consistent with its Policy." ECF No. 129-1 at 13. Specifically, Doe alleges he was denied an impartial review during the appeal of Grinnell's determinations of his responsibility for sexual misconduct. Doe has proffered sufficient evidence for a reasonable jury to find Grinnell's review of Doe's appeal was not impartial. Because the determinations of responsibility were the basis of Grinnell's decision to dismiss Doe, evidence that the review of the determinations was not impartial is of heightened significance.

The parties do not dispute that Conner, the appeals officer, consulted with the Adjudicator before resolving Doe's appeal. *See* ECF No. 136 ¶¶ 331, 335. Conner emailed the Adjudicator—who had written the determinations of responsibility that were the subject of Doe's appeal—a copy of Doe's appeal with the message: "I would like to afford you the opportunity to respond with any comments, if you'd like." ECF No. 131-3 at P-APP 592. The Adjudicator responded to Conner's request with an email addressing each of Doe's appeal

arguments and providing additional support to the findings. *Id.* at P-APP 588–91. Conner claims her review of Doe's appeal remained independent despite her consultation with the Adjudicator. Conner Dep. 122:2–15, ECF No. 131-3 at P-APP 578. However, the Policy does not provide for the adjudicator's involvement in the appeal process. *See* ECF No. 136 ¶ 329. Rather, the Policy requires the appeals officer to be an "impartial decision-maker" without any actual bias or conflict of interest. ECF No. 129-7 at P-APP 284.

The Court finds Doe has proffered sufficient facts from which a reasonable jury could doubt the accuracy of the outcome of Doe's disciplinary proceeding. *Cf. Univ. of Arkansas-Fayetteville*, 2019 WL 1493701, at *12 (determining plaintiff failed to sufficiently allege hearing panel's finding that he lacked credibility raised an articulable doubt on the accuracy of the hearing). Evidence regarding Conner's consultation with the Adjudicator is sufficient to generate a dispute of material fact regarding the accuracy of the outcome of Doe's disciplinary proceeding. A reasonable jury could conclude that, even though the Policy does not explicitly prohibit consultation between the appeals officer and an adjudicator, such consultation detracts from the appeals officer's independence. A reasonable jury could further conclude that Doe did not receive a fair and impartial review of his appeal and this lack of an impartial review casts doubt on the accuracy of the outcome of the disciplinary proceeding. Because the evidence regarding Doe's appeal is sufficient to demonstrate a genuine dispute of material fact as to the first prong of his erroneous outcome claim, the Court does not need to address Doe's other alleged procedural inaccuracies.

## 2. Gender bias as a motivating factor

As for the second prong of his erroneous outcome claim, Doe alleges a reasonable jury could find gender bias was a motivating factor behind the inaccuracy in his disciplinary proceeding from four types of conduct: 1) gender-biased Title IX trainings attended by

decisionmakers; 2) the political climate on campus generated by campus activists; 3) the reasoning behind the determinations of responsibility in Doe's sexual misconduct case; and 4) the statistics of the outcomes of other sexual misconduct cases at Grinnell indicating Grinnell's preferential treatment of female respondents. ECF No. 129-1 at 29–39. Doe fails to show a genuine dispute of material fact as to the effect of gender bias based on Grinnell's Title IX training materials, the political climate on Grinnell's campus, or the statistics of the outcomes of other sexual misconduct cases at Grinnell. Doe does, however, demonstrate a genuine dispute of material fact regarding the reasoning behind the determinations of Doe's responsibility for sexual misconduct, particularly in light of the determination of responsibility in another sexual misconduct case at Grinnell written by the same Adjudicator. Considering this evidence, a reasonable jury could find gender bias was a motivating factor that caused an inaccuracy in Doe's disciplinary outcome. Because Doe demonstrated a genuine dispute of material fact corresponding to both prongs of his erroneous outcome claim, the Court denies Defendants' motion for summary judgment on Doe's Title IX claim.

a.      Title IX training

Doe first alleges decisionmakers Moschenross, Voos, and Asberry attended a Title IX training that "portrayed males as sexual predators and females as sexual assault victims." ECF No. 129-1 at 29–30. Doe also alleges the Adjudicator attended a separate training presentation that used material with gender-biased language. *Id.* at 30–31. The presentations in both trainings included hypothetical scenarios featuring female victims and male perpetrators. *See, e.g.*, ECF No. 129-7 at P-APP 320; Pl.'s Unsealed App. Supp. Resp. Defs.' Mot. Summ. J. P-APP at 396–99, ECF No. 129-8. However, the adjudicator training presentation also included statistics showing both men and women can be victims of sexual violence. ECF No. 129-7 at P-APP 322. The Title IX training presentation included a statement indicating Title IX

covers both men and women. ECF No. 129-8 at P-APP 362. The Title IX training presentation also contained definitions of sexual misconduct offenses with gender-neutral language. *Id.* at P-APP 365–70. Given the presentations' statements indicating men can also be victims of sexual assault, no reasonable jury could find the inclusion of female names in hypothetical scenarios in training materials reveals gender bias. *See Doe v. Colgate Univ.*, 760 F. App'x 22, 31 (2d Cir. 2019) (unpublished) (concluding Title IX training presentations that used female pronouns for victims were insufficient evidence of gender bias); *Doe v. Univ. of Denver*, No. 16–cv–00152–PAB–KMT, 2018 WL 1304530, at *10 (D. Colo. Mar. 13, 2018) (concluding defendant's training presentations were gender-neutral and thus did not give rise to gender bias).

Grinnell's training materials are distinguishable from those at issue in *Doe v. Washington & Lee*, No. 6:14–CV–00052, 2015 WL 4647996, at *10 (W.D. Va. Aug. 5, 2015). There, a university decisionmaker cited an article during a presentation "posit[ing] sexual assault occurs whenever a woman has consensual sex with a man and regrets it." *Washington & Lee*, 2015 WL 4647996, at *10. The United States District Court for the Western District of Virginia found the training materials citing that article supported a plausible allegation that the decisionmaker held gender-biased views. *Id.* Here, the use of female pronouns and names in the examples in the training presentations may reflect the reality that more complainants are female than male—but it does not reveal gender bias. *See Colgate Univ.*, 760 F. App'x at 31 ("There is no indication [the Title IX Coordinator's] use of such pronouns reflects anything more than the statistical reality that most respondents are men and most complainants are women."). Grinnell's training materials contain inclusive and gender-neutral information. No reasonable jury could find the training materials demonstrated gender bias.

b.      Campus climate

Doe also alleges events at Grinnell in the years prior to his disciplinary process provide evidence of "tremendous pressure to protect female sexual assault victims and issue harsher sanctions against male respondents." ECF No. 129-1 at 38. Doe argues the advocacy by the student group Dissenting Voices, the criticism in the *Huffington Post*, the Office of Civil Rights investigation, and the revision of the sexual misconduct policy all demonstrate Grinnell was motivated by gender bias during Doe's disciplinary process. *Id.* at 34–37. Doe does not provide evidence, however, that the decisionmakers in his case considered the opinions of Dissenting Voices, the criticism in the press, or the investigation by the Office of Civil Rights in coming to their conclusions in his disciplinary proceeding. Moreover, Doe fails to provide evidence that any of these external circumstances—if they had been considered—would have resulted in gender bias affecting Doe's disciplinary proceeding. For example, Grinnell made changes to its policy in the wake of the activism of Dissenting Voices—but all of the changes it made were gender neutral. *See* ECF No. 129-7 at P-APP 347–49 (letter from Grinnell's President noting changes to the Policy included establishing an external adjudicator model, increasing the length of time to retain recordings, and requiring more training for campus safety staff members).

The Court concludes no reasonable jury could find the evidence of Grinnell's reform of the sexual misconduct disciplinary process—which reflected a national trend—shows gender bias affected the outcome of Doe's disciplinary proceeding. Other courts have reached similar conclusions. In *Colgate*, for example, the Second Circuit held student activism events on campus similar to those held by Dissenting Voices and interaction with the Office of Civil Rights were insufficient to show gender bias. 760 F. App'x at 30. In *Doe v. Trustees of Boston College*, the First Circuit held the "outside pressure" from the Office of Civil Rights did not itself "reflect[ ] or espouse[ ] gender bias" and thus could not influence the decisionmakers. 892 F.3d 67, 91, 92

(1st Cir. 2018). In *Doe v. University of Colorado, Boulder ex rel. Board of Regents of University of Colorado*, the United States District Court for the District of Colorado found "pressure from the federal government to investigate sexual assault allegations more aggressively—either general pressure exerted by [an Office of Civil Rights publication] or specific pressure exerted by an investigation directed at the University, or both—says nothing about the University's alleged desire to find men responsible because they are men." 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017). As in those cases, there is no evidence Grinnell's campus climate resulted in gender bias in Doe's disciplinary proceeding.

c. Determinations of responsibility in Doe's case

Doe next asserts the analysis in the determinations of responsibility concluding he violated the Policy, which Grinnell relied upon to dismiss him, "reflect . . . outdated and discriminatory views of male and female roles in heterosexual relationships which impacted [the] credibility determinations." ECF No. 129-1 at 32. Doe alleges the determinations of responsibility were influenced by the "belief that females are incapable of asserting themselves in sexual situations with male counterparts." *Id.* In response, Defendants argue no reasonable jury could conclude the determinations contain evidence of intentional sex bias, in part because the determinations "do not mention sex or make any assumptions about responsibility or the facts." ECF No. 141 at 10. Instead, Defendants argue, Doe's characterization of the determinations is an attempt "to second-guess [the Adjudicator]'s sincere belief that [Doe] sexually assaulted two students." *Id.*

One court has concluded, at the motion to dismiss stage, that gender bias can be inferred when decisionmakers employ "outdated and discriminatory views of gender and sexuality." *Marymount Univ.*, 297 F. Supp. 3d. at 585–86 (concluding a hearing panel member's statement insinuating men are aroused during nonconsensual contact plausibly supported a minimal inference of sex bias). Doe points to specific portions of the determinations of responsibility he

22

claims are evidence of the influence of gender bias. For example, Doe claims the determination in Complainant #1's case arbitrarily found Complainant #1's side of the story more credible and made unwarranted assumptions about Complainant #1 being naïve and sexually inexperienced. *See* ECF No. 129-1 at 32–33. As for the determination in Complainant #2's case, Doe argues, among other inaccuracies, the determination of responsibility wrongfully found Complainant #2 was coerced into having sex with Doe without analyzing evidence in the record showing her choice to have sex was voluntary. *See id.* at 33–34. Doe also argues the determination in Complainant #2's case reveals evidence of gender bias because it concludes Doe must have coerced Complainant #2 into consenting to sex, in part, because Complainant #2 reported she was not on birth control during the encounter. *Id.* at 34.

For the reasons discussed below, a jury could—but need not—find gender bias caused an inaccuracy in Doe's disciplinary outcome. The Court concludes Doe has presented sufficient evidence from which a reasonable jury could deduce the determinations of responsibility relied upon by Grinnell to dismiss Doe were based on a biased perspective regarding the behavior of women during sexual encounters. *See Marymount Univ.*, 297 F. Supp. 3d. at 585–86. The Court now addresses portions of the determination of responsibility in Complainant #2's case.[6] The Court concludes the facts Doe proffers related to the analysis and reasoning contained in the determination of responsibility in Complainant #2's case are sufficient to generate a genuine dispute of material fact as to gender bias in Doe's disciplinary proceeding.

First, Doe has produced evidence that the determination of responsibility in Complainant #2's case did not note some of Complainant #2's statements to the investigators that

---

[6] The Court finds the facts relevant to Complainant #2's case demonstrate a genuine dispute of material fact so that the jury could find for Doe on his erroneous outcome claim. Therefore, the Court does not need to analyze the arguments Doe asserts as to the gender bias regarding Complainant #1's complaint or other aspects of the disciplinary proceeding.

weigh against the determination's conclusion that Complainant #2 was coerced into consenting to sex with Doe.[7] The determination states: "[A] preponderance of the evidence shows that [Doe]'s sustained pressure on [Complainant #2] coerced her to acquiesce to sexual intercourse that she did not want and to which she would not otherwise have submitted." ECF No. 131-12 at P-APP 1114. But the determination does not analyze, consider, grapple with, or even note the following statements made by Complainant #2 to investigators:

- "And I just remember thinking like well maybe—maybe if I just like do it, if I just like kiss him—or I don't know—like—he'll leave me alone and I'll just go to sleep. And I should have just stopped and left . . . but I turned back towards him and was like I—I responded—I like kissed him." ECF No. 131-6 at P-APP 820.

- "I guess I just felt like fine, it's just sex, but I just didn't really want to do it." *Id.*

- "I remember like to a certain extent like being like well I'll just get this over with." ECF No. 131-7 at P-APP 823.

- "Yeah, I just kinda figured if [I] get it over with—then he would just leave me alone." ECF No. 131-9 at P-APP 915.

The determination only notes Complainant #2 said she was "passive," that she "just wanted it to be done," and she tried to "zone out." ECF No. 131-12 at P-APP 1114.

The Policy states "[c]oercion can include unreasonable and sustained pressure for sexual activity . . . . A person's words or conduct cannot amount to coercion unless they wrongfully impair the other's freedom of will and ability to choose whether or not to engage in sexual activity." ECF No. 129-7 at P-APP 253. The determination of responsibility concluded Doe coerced Complainant #2 into acting against her free will. *See* ECF No. 131-12 at P-APP 1113 ("[Doe] applied 'unreasonable and sustained pressure' that 'wrongfully impair[ed] [Complainant

---

[7] The Court does not suggest a jury consider Complainant #2's statements for their truth. But evidence of Complainant #2's statements may be admissible at trial in order for the jury to consider why the statements were not incorporated into the determination of responsibility.

#2's] freedom of will and ability to choose whether or not to engage in sexual activity." (second alteration in original)). But the determination failed to engage with the evidence in the record indicating Complainant #2 *chose* to engage in sexual activity—even if she was motivated only by a desire to "get [it] over with." *See* ECF No. 131-7 at P-APP 823. Instead, the determination described Complainant #2's actions as a way to "passively allow[ ]" Doe to have sex with her. ECF No. 131-12 at P-APP 1114. The determination's omission of some parts of the investigation record provides evidence sufficient to demonstrate a dispute of material fact as to gender bias.

A reasonable jury could draw different conclusions from the omissions in the determination of responsibility. One reasonable conclusion is that the determination was influenced by the gendered assumption that a woman would not consent to sex she felt was meaningless, and thus Complainant #2's statements that did not conform to this assumption were omitted. Another reasonable conclusion is that the evidence in the investigation report showed Doe coerced Complainant #2 into having sex and the inclusion of all of Complainant #2's statements in the determination would have been unnecessary. Because a jury could reach these opposite conclusions, Doe has produced evidence exposing a genuine issue of material fact. A jury need not find the lack of analysis of some of Complainant #2's statements proves that gender bias affected Doe's disciplinary proceeding—but a reasonable jury could.

Second, Doe has provided evidence the determination relied on Complainant #2's lack of birth control to support its finding of coercion. This evidence also results in a genuine dispute of material fact from which a reasonable jury could deduce gender bias caused an inaccuracy in Doe's disciplinary proceeding. The determination of responsibility states: "[Complainant #2's] supply of birth control pills had run out while she was in Grinnell, and this fact supports her assertion that she did not want to have sexual intercourse with [Doe]." ECF No. 131-12 at P-APP 1114.

Considering this statement, a reasonable jury could conclude the determination of responsibility was influenced by the assumption that a woman without birth control would not consent to sex. Complainant #2 did in fact send a text message to her friend the day after the incident with Doe telling her friend she was upset about what happened in part because her birth control prescription had run out. ECF No. 131-10 at P-APP 947. However, Complainant #2 did not tell investigators that she did not consent to having sex with Doe *because* she was not on birth control. Rather, she told the investigators she had run out of her birth control prescription when explaining why she asked Doe to wear a condom—not as a reason she did not consent to sex with Doe. ECF No. 131-7 at P-APP 828 ("[S]o the reason that I freaked out when he didn't want to wear a condom is um because my birth control wasn't—like I didn't have my birth control with me.").

A reasonable jury could conclude the determination of responsibility included the information about Complainant #2 not being on birth control because the detail corroborated Complainant #2's account of the incident. A reasonable jury could also conclude the discussion of this evidence demonstrates gender bias. This latter conclusion is reasonable in light of the determination's exclusion of other evidence incongruous with common stereotypes about the typical behavior of women in sexual encounters. For example, this statement by Complainant #2, which does not conform with the common stereotype of women being more passive than men during sexual encounters, is not addressed in the determination of responsibility: "I said that he could be like more rough but like not like—just meaning like . . . like he didn't have to like take me slowly." ECF No. 131-6 at P-APP 817. Considering the exclusion of both this statement and the others previously discussed, a reasonable jury could—but need not—find the determination's reliance on Complainant #2's lack of birth control as evidence of gender bias.

Finally, Doe further demonstrates a dispute of material fact regarding the impact of gender bias on his disciplinary proceeding by providing evidence of a 2015 sexual misconduct case at

Grinnell adjudicated by the Adjudicator. The analysis in the determination of responsibility in the 2015 case, which found a female respondent responsible for sexual misconduct, supports Doe's assertion that there is a dispute regarding the impact of gender bias on Doe's disciplinary proceeding. The 2015 determination of responsibility, like the determination in Doe's case, considers evidence of two conflicting accounts of a sexual encounter. *See* Pl.'s Sealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 1660–67, ECF No. 131-18. The 2015 determination of responsibility notes the female respondent believed she had consent for sexual conduct with the complainant, also female, who reported she was trying to sleep when the respondent digitally penetrated her vagina. *Id.* at P-APP 1662, 1663. That determination ultimately concluded the sexual intercourse was nonconsensual and recommended a sanction for the respondent. *Id.* at P-APP 1665, 1666. But the determination of responsibility also stated: "While the conduct at issue here was indeed serious, this adjudicator believes [the respondent] mistakenly thought she was engaging in conduct that would be welcomed by [the complainant]." *Id.* at P-APP 1666. In contrast, Doe's actions are not described as mildly—even though Doe reported he believed Complainant #2 had consented to the conduct. *Compare* ECF No. 131-12 at P-APP 1113 ("A preponderance of the evidence shows that [Doe] continued to kiss [Complainant #2], to touch her, and to try to turn her toward him, notwithstanding her stated desire to sleep and her prior verbal indication that she did not want to engage in any more sexual activity."), *with* Pl.'s Sealed App. Supp. Resp. Defs.' Mot. Summ. J. at P-APP 1185, Recorded Adjudication Meeting 38:11–39:38, ECF No. 131-13 (recording of Doe explaining to the Adjudicator during his adjudication meeting he understood that Complainant #2 had consented to the conduct).

The difference between the analysis in the 2015 determination of responsibility and the analysis in Doe's determination may not be indicative of gender bias. But the differences in the

analyses of the facts of the two cases do support a genuine dispute of material fact. It would be reasonable—although not necessary—for a jury to draw the inference that the language in the 2015 determination differed because the respondent was female.

> d.      Other sexual misconduct cases at Grinnell

The Court rejects Doe's argument that a pattern in the outcomes of the sexual misconduct cases at Grinnell generates a dispute of material fact. *See* ECF No. 129-1 at 31–32. Most of the sexual misconduct cases Doe cites involve circumstances distinct from those in Doe's case and thus are not apt comparators to reveal gender bias. Further, Doe does not allege his Title IX claim under a selective enforcement theory, and thus does not specifically allege similarly situated females were treated more favorably. *Cf. Rossley*, 342 F. Supp. 3d at 931–34.

Thus, although the outcomes of other sexual misconduct cases at Grinnell are insufficient to give rise to a dispute of material fact regarding the impact of gender bias on Doe's disciplinary outcome, the analysis in the determination of responsibility in the 2015 case discussed above—when viewed in the light most favorable to Doe's argument—constitutes such a dispute.

> e.      Conclusion

The Court recognizes the dearth of case law finding genuine disputes of material fact regarding gender bias reflected in an educational institution's disciplinary process. Many courts have found in favor of defendants on erroneous outcome claims, finding the plaintiffs failed to proffer specific evidence demonstrating genuinely disputed material facts regarding gender bias in the defendants' decision-making processes. *See Ayala v. Butler Univ.,* No. 1:16-cv-01266-TWP-DLP, 2018 WL 5117292, at *8 (S.D. Ind. Oct. 19, 2018) (holding evidence of questions by hearing panel members about consent "did not directly show any gender bias nor did they imply any gender bias"); *Rossley*, 342 F. Supp. 3d at 926–28; *Doe v. George Washington Univ.*, 305 F. Supp. 3d 126, 133–34 (D.D.C. 2018) (holding

"a *plausible* inference [of gender bias] is not sufficient to show likelihood of success on the merits as required for a preliminary injunction" (emphasis added)); *Univ. of Denver*, 2018 WL 1304530, at *11–12 (reasoning a decisionmaker's determination that the female complainant was more credible than the male respondent, among other deficiencies in the disciplinary proceeding, did not reveal gender bias); *Colgate Univ.*, 760 F. App'x at 31–32 (reasoning a decisionmaker's assessment of complainant's memory did not evince gender bias). These cases, however, are distinguishable. For example, in *Rossley*, this Court found the plaintiff provided only conclusory statements—and no actual evidence—to support his argument that the defendant university viewed the evidence in his sexual misconduct disciplinary proceeding through a gender-biased lens. 342 F. Supp. 3d at 926. Here, in contrast, Doe has generated a dispute of material fact by pointing to specific omissions in the determination of responsibility in Complainant #2's case that could lead a jury to conclude the determination was motivated by gender bias.

Thus, the Court finds Doe has provided evidence to show a dispute of material fact so that a reasonable jury could find for Doe on his erroneous outcome claim. Specifically, Doe has provided evidence sufficient to cast doubt on the accuracy of the outcome of his disciplinary proceeding and, further, has provided evidence suggesting that gender bias could be a motivating factor that caused the inaccuracy. Defendants' motion for summary judgment is denied as to Doe's Title IX claim.

In denying Defendants' motion for summary judgment, the Court reaches no conclusion as to the propriety of Grinnell's decision to dismiss Doe. Universities have flexibility in developing and executing their disciplinary policies. *See Univ. of St. Thomas*, 240 F. Supp. 3d at 989–90. But universities must also comply with Title IX. Here, Doe has offered sufficient evidence to show Grinnell may have failed to comply with its Title IX obligations. Whether Grinnell violated Title IX by discriminating against Doe on the basis of sex must be decided by a jury. At this

stage in the proceedings, the Court may not weigh that evidence against other evidence in the record—so long as there is evidence that could support a finding in Doe's favor, summary judgment is appropriate.

### B.    Breach of Contract Claim (Count III)

The Court next turns to Doe's breach of contract claim. As an initial matter, the Court must address Defendants' argument that Doe alleges new breach of contract claims in his resistance to Defendants' motion for summary judgment. *See* ECF No. 141 at 21–22. In his complaint, Doe alleges the following in his breach of contract claim, Count III:

138.    Defendant Grinnell breached express and/or implied contracts with John Doe.

139.    Defendant Grinnell's Policy provides that students are to have a fair and impartial disciplinary process in which it is the responsibility of the College to show that a violation has occurred before any sanctions are imposed. Defendant Grinnell breached its contract with John Doe when it failed to conduct a fair and impartial process, including not holding a hearing. At no time was John Doe afforded the procedural guarantees that generally accompany a hearing, such as the right to present witnesses and evidence, confront one's accuser, and cross-examine and challenge any witnesses against him, all before an impartial and objective fact-finder. Thus, Defendants violated the contract with John Doe when they failed to afford him a proper hearing on the accusations against him.

140.    The U.S. Department of Education Office for Civil Rights requires that the excessively low preponderance of the evidence burden of proof be used to evaluate allegations of sexual misconduct. Though an inadequate standard to protect the procedural rights of accused students, Defendant Grinnell utilizes this standard of review, as recognized in its Policy. Defendant Grinnell violated this provision when it improperly placed the burden of proof on John Doe to prove that the accusations against him were not true and when it failed to utilize the preponderance of the evidence standard in fact in reaching the outcome. Defendant Grinnell therefore breached its contract with John Doe when it failed to utilize the requisite preponderance of the evidence standard.

141.    Based on the aforementioned facts and circumstances, Defendant Grinnell breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with John Doe. Defendant Grinnell failed its duty of good faith and fair dealing when it meted out a disproportionate sanction notwithstanding the flawed process and lack of evidence in support of the allegations of sexual misconduct.

ECF No. 1 ¶¶ 138–141. In his resistance to Defendants' motion for summary judgment, Doe argues Grinnell breached its contract by deviating from specific aspects of the Policy. ECF No. 129-1 at 39–40. Doe lists seventeen areas of the Policy he contends Grinnell violated. *Id.* Doe claims these deviations demonstrate "Defendants acted in bad faith . . . by ignoring the express terms of the Policy, [and] by reading in terms that did not exist." *Id.* at 40–41. He argues Grinnell's failure "to carry out their roles and responsibilities under the Policy in a diligent, fair and impartial manner . . . . resulted in a severe, unwarranted and disproportionate sanction in Plaintiff's case." *Id.* at 42. Defendants ask the Court not to consider the specific deviations from the Policy alleged by Doe in his resistance, arguing his allegations are untimely because he did not initially plead them in his complaint. ECF No. 141 at 21–22.

Rule 8(a) of the Federal Rules of Civil Procedure requires that complaints contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Although the pleading requirements under Rule 8(a) are relatively permissive, the essential function of notice pleading is to 'give the defendant fair notice of what the . . . claim is and the grounds up which it rests.'" *WireCo Worldgroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 992 (8th Cir. 2018) (omission in original) (emphasis omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[t]he federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining a defense upon the merits." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1219 (3d 2002 ed. & Supp. 2019); *accord Oglala Sioux Tribe v. Andrus*, 603 F.2d 707, 714 (8th Cir. 1979).

The Court determines Defendants had sufficient notice of the grounds for Doe's breach of

contract claim. In his complaint, Doe alleged Defendants breached their contract by "met[ing] out a disproportionate sanction notwithstanding the flawed process and lack of evidence in support of the allegations of sexual misconduct." ECF No. 1 ¶ 141. From the outset, Defendants were on notice of Doe's allegation that his disciplinary proceeding was unfair. Doe's broad description of his claim in his complaint did not prejudice Defendants or prevent them from adequately preparing their defense.

*WireCo Worldgroup* provides a helpful counterpoint. In that case, the Eighth Circuit affirmed the district court's decision not to consider new grounds for the plaintiff's breach of contract claim that the plaintiff raised for the first time in its resistance to the defendant's motion for summary judgment. 897 F.3d at 992–93. There, however, the Eighth Circuit noted the complaint "was specific as to the nature, bases, and grounds of [the defendant]'s alleged breaches." *Id.* at 993. The Eighth Circuit reasoned allowing a plaintiff to allege additional grounds for a breach of contract claim in its resistance to defendant's summary judgment motion would force the defendant to "intuit additional theories of liability that were not apparent from [the plaintiff's] complaint." *Id.* Here, by contrast, Doe pleaded from the beginning that Grinnell conducted an unfair and flawed disciplinary proceeding. The more specific arguments regarding the flaws in Doe's disciplinary proceeding argued in Doe's resistance should not have been unexpected to Defendants. Doe's characterization of his claims in his resistance, although more specific, are not based on new facts unfamiliar to Defendants. *Cf. J. Lloyd Int'l, Inc. v. Testor Corp.*, No. 08-CV-134-LRR, 2010 WL 605657, at *6 (N.D. Iowa Feb. 17, 2010) (declining to consider claims at the summary judgment stage not initially pleaded because they were based "on entirely different facts and theories"); *Sun Media Sys., Inc. v. KDSM, LLC*, 564 F. Supp. 2d 946, 995–96 (S.D. Iowa 2008) (same). Thus, the Court will consider the Policy deviations listed in Doe's resistance to Defendants' motion for summary judgment when resolving Doe's breach of

contract claim.

Under Iowa law, to prevail on a breach of contract claim, a plaintiff must prove: 1) the existence of a contract; 2) the terms and conditions of the contract; 3) that the plaintiff has performed all the terms and conditions required under the contract; 4) the defendant's breach of the contract in some particular way; and 5) that the plaintiff has suffered damages as a result of the breach. *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). Iowa law recognizes an implied covenant of good faith and fair dealing in all contracts. *See Alta Vista Props., LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 730 (Iowa 2014); *Bagelmann v. First Nat'l Bank*, 823 N.W.2d 18, 34 (Iowa 2012). "The underlying principle is that there is an implied covenant that neither party will do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Am. Tower, L.P. v. Local TV Iowa, LLC*, 809 N.W.2d 546, 550 (Iowa Ct. App. 2011) (quoting 13 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 38.15 (4th ed. 2000) (hereinafter "Williston on Contracts")).

The parties do not dispute the Policy served as a contract between Grinnell and Doe containing terms and conditions relevant to the present dispute. *See* ECF No. 100 at 26; ECF No. 129-1 at 39–42. Nor do the parties dispute the Policy contained an implied covenant of good faith and fair dealing. There is a factual dispute, however, over whether Grinnell breached the contract and, if so, whether Grinnell's breach caused Doe to suffer damages. The Court concludes that dispute is both genuine and material to Doe's claim.

In general, the terms of a contract "will be strictly construed if the words are clear and unambiguous." *SDG Macerich Props., L.P. v. Stanek, Inc.*, 648 N.W.2d 581, 586 (Iowa 2002); *see also Jackson v. Drake Univ.*, 778 F. Supp. 1490, 1493 (S.D. Iowa 1991) (finding the terms of a financial aid agreement between a student and university were unambiguous and did not contain

an implicit right for the student to play basketball). Under the doctrine of substantial performance, however, a party can fulfill its obligations under a contract with a performance that, "despite deviations from the contract requirements, provides the important and essential benefits of the contract to the promisee." *SDG Macerich Props.,* 648 N.W.2d at 586 (quoting an earlier edition of 17B C.J.S. *Contracts* § 801 (2019)); *see also Union Pac. R.R. Co. v. Cedar Rapids & Iowa City Ry. Co.,* 477 F. Supp. 2d 980, 991 (N.D. Iowa 2007) ("The Iowa Supreme Court has recognized that there may be situations in which substantial performance of a contract term will suffice."). Generally applied in disputes overs construction contracts, "[t]he doctrine . . . excuses contractual deviations or deficiencies which do not severely impair the purpose underlying a contractual provision." *SDG Macerich Props.,* 648 N.W.2d at 586. "In the area of contracts, '[s]ubstantial performance is performance without a material breach, and a material breach results in performance that is not substantial.'" *Flynn Builders, L.C. v. Lande,* 814 N.W.2d 542, 546 (Iowa 2012) (alteration in original) (quoting II E. Allan Farnsworth, *Farnsworth on Contracts* § 8.16 (3d ed. 2004)).

The Eighth Circuit has recognized the doctrine of substantial performance as applicable to non-construction breach of contract claims under Illinois state law, even though Illinois courts, like Iowa courts, typically apply the doctrine to construction disputes. *See In re Interstate Bakeries Corp. v. Interstate Brands Corp.,* 751 F.3d 955, 963 (8th Cir. 2014) ("[W]e are not convinced that Illinois law limits consideration of the doctrine of substantial performance to construction cases."). The Court thus considers the doctrine of substantial performance in analyzing Doe's breach of contract claim.

Doe alleges specific ways Grinnell deviated from its contract with Doe. *See* ECF No. 129-1 at 39–40. Doe provides evidence that the following deviations—among others—occurred during his disciplinary proceeding: Moschenross did not participate in the decision to pursue informal

resolution of Complainant #1's complaint, *see* Moschenross Dep. 54:18–55:11, 60:3–6, ECF No. 131-4 at P-APP 628, 630; *see generally* ECF No. 129-7 at P-APP 272; Moschenross did not participate in the decision to pursue formal resolution of the complaints against Doe, *see* Moschenross Dep. 65:17–25, ECF No. 131-4 at P-APP 632; *see generally* ECF No. 129-7 at P-APP 267; Moschenross did not participate in the decision to consolidate Complainant #1's and Complainant #2's complaints into one investigation, *see* Moschenross Dep. 69:4–22, ECF No. 131-4 at P-APP 633; *see generally* ECF No. 129-7 at P-APP 276; the Notice of Investigation Doe received did not accurately indicate the conduct for which he was being investigated, *see* ECF No. 131-19 at P-APP 1725; ECF No. 131-5 at P-APP 708; *see generally* ECF No. 129-7 at P-APP 274; Doe was told he could only have one support person during his interview with the investigators while Complainant #2 was allowed to have two support people present during her interview, *see* Voos Dep. 111:15–18, ECF No. 131-2 at P-APP 487; ECF No. 131-3 at P-APP 564; ECF No. 131-6 at P-APP 801–03; *see generally* ECF No. 129-7 at P-APP 272; the Adjudicator did not meet with investigators to discuss Doe's case, *see* Norton Dep. 46:3–6, ECF No. 131-5 at P-APP 696; *see generally* ECF No. 129-7 at P-APP 280; Complainant #1's adjudication meeting occurred before the final investigation report was issued, *see* ECF No. 131-11 at P-APP 1102 (noting the Adjudicator met with Complainant #1 on June 3, 2016); ECF No. 131-4 at P-APP 681 (investigation report dated June 6, 2016); *see generally* ECF No. 129-7 at P-APP 278–80; and Complainant #1 was allowed to submit comments on the preliminary investigation report several days late, after the final investigation report had already been issued and after she met with the Adjudicator, *see* ECF No. 131-4 at P-APP 679; *see generally* ECF No. 129-7 at P-APP 277.

Defendants argue Doe's claim fails because Grinnell nonetheless substantially performed the contract. Defendants do not deny, however, Grinnell deviated from the Policy during Doe's disciplinary proceeding. Defendants do not dispute, for example, that Complainant #1 had more than one support person at her meeting with investigators, that Grinnell gave Complainant #1 flexibility in scheduling her adjudication meeting and submitting her impact statement, that Moschenross was not involved in the disciplinary process at certain points, and that the Adjudicator did not meet with investigators. *See* ECF No. 141 at 23. Instead, Grinnell argues "[n]one of the alleged errors frustrated the purpose of his disciplinary process—to investigate and adjudicate the claims of misconduct—or [Doe]'s protections under that Policy." *Id.* Further, Defendants argue, the Policy allows for flexibility and does not require stringent compliance with its terms. At the hearing on this motion, Defense counsel pointed out, as an example of the Policy's flexibility, that the timeframe for scheduling adjudication meetings can be extended for good cause. Mot. Summ. J. Hr'g Tr. 60:21–61:2, ECF No. 149 at 60–61; *see* ECF No. 129-7 at P-APP 278.

The Court concludes there is a factual dispute over whether Defendants' deviations from the Policy amounted to a breach of contract that caused Doe to suffer damages. Defendants claim the deviations identified by Doe are immaterial and Grinnell still substantially performed the contract; Doe claims the deviations denied him essential benefits of the contract. "There is no ready formula for determining what amounts to substantial performance in any particular case. Precise boundaries cannot be drawn, since the question turns on the facts of each case." 15 Williston on Contracts § 44:54. "Whether there has been substantial performance of a contract is ordinarily a question of fact for the jury to resolve." 17B C.J.S. *Contracts* § 1035 (2019). Resolving all factual disputes in favor of Doe, the nonmoving party, the Court cannot grant Defendants' motion for summary judgment. A reasonable jury could find Grinnell's deviations

from the contract did not prevent Grinnell from fulfilling the essence of its contractual duties and did not affect Grinnell's ultimate decision to dismiss Doe. Alternatively, a reasonable jury could also determine Grinnell's deviations, considered in the aggregate, made the disciplinary proceedings unfair to Doe and thus amounted to a material breach of the contract that caused him harm. Because the facts in the record could reasonably sustain either determination, Doe's breach of contract claim should be decided by a jury.

Because there are underlying factual disputes that cannot be resolved by the Court on summary judgment, the Court denies Defendants' motion for summary judgment on Doe's breach of contract claim.

### C.     Promissory Estoppel Claim (Count IV)

Under Iowa law, "[t]he theory of promissory estoppel allows individuals to be held liable for their promises despite an absence of the consideration typically found in a contract." *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 48 (Iowa 1999). In order to establish a claim for promissory estoppel, a plaintiff must show:

> (1) [A] clear and definite promise; (2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Schoff*, 604 N.W.2d at 49. A defendant may not be held liable, however, for a representation—that is, "a statement . . . made to convey a particular view or impression of something with the intention of influencing opinion or action." *Id.* at 51 (omission in original) (quoting *Webster's Third New International Dictionary* 1926 (1993)). And, because promissory estoppel is a form of equitable relief and applies only where a contract otherwise does not exist, a plaintiff may only assert a claim of promissory estoppel if the promise at issue is not already encompassed by a written and formal contract. *See, e.g.*, *PFS Distrib. Co. v. Raduechel*,

574 F.3d 580, 599 (8th Cir. 2009). Finally, Iowa law requires a plaintiff asserting promissory estoppel claims to demonstrate "strict proof of all elements." *Nat'l Bank of Waterloo v. Moeller*, 434 N.W.2d 887, 889 (Iowa 1989).

Doe contends he "relied to his detriment on [the] express and implied promises and representations made by Defendant Grinnell." ECF No. 1 ¶ 147. Doe asserts Grinnell made the following promises—which he alleges are beyond the express provisions of the Policy—that he relied upon to his detriment: 1) Doe received a Notice of Investigation that stated he was being investigated for only one incident of nonconsensual sexual conduct with Complainant #1 and the investigation report ultimately contained references to two incidents; 2) Doe was given a resource card with information about counseling services but it only included resources for those who had experienced sexual assault, not those accused; 3) Doe was told he could only bring one support person to his meeting and Complainant #1 brought two; 4) Doe was provided with deadlines with which he complied and Complainant #1 did not comply; and 5) Doe was told by the Adjudicator during his adjudication meeting that she was not testing his memory but then cited Complainant #1's memory as a sign of credibility. *See* ECF No. 129-1 at 42–43.

The undisputed facts show Doe's estoppel claim fails as a matter of law. Doe does not provide examples of clear and definite promises upon which Defendants knew Doe would rely. The statements Doe calls promises are representations, which under Iowa law, cannot sustain a promissory estoppel claim. *Schoff*, 604 N.W.2d at 51; *see also Newkirk v. GKN Armstrong Wheels, Inc.*, 168 F. Supp. 3d 1174, 1190 (N.D. Iowa 2016) ("A claim for promissory estoppel cannot lie on a mere representation.").

For example, when Doe was told there was only one incident of sexual misconduct with Complainant #1 alleged against him in the Notice of Investigation, that statement conveyed a representation of a specific fact, but not a promise to Doe. The same logic applies to Defendants'

statements about the resources available to Doe, the rules about the support persons and the deadlines, and the Adjudicator's instructions to Doe during his adjudication meeting—all these were representations made to Doe about the disciplinary process, not clear and definite promises to invoke Doe's reliance. In other words, the conduct Doe alleges is irrelevant to an estoppel claim. *See Anderson*, 477 U.S. at 248. ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

Concluding Doe cannot prove the first element of a promissory estoppel claim, the Court need not consider the other elements. Doe's promissory estoppel claim fails as a matter of law. The Court grants summary judgment to Defendants on Doe's promissory estoppel claim.

### D.    Negligent Misrepresentation Claim (Count V)

Doe alleges Grinnell, Moschenross, Voos, and Asberry are liable for the tort of negligent misrepresentation under Iowa law. ECF No. 1 ¶¶ 150–155. Doe asserts the information Defendants provided him regarding the status of Complainant #1's case against him during his November 2015 meeting with the Title IX Office was false. ECF No. 129-1 at 43–44.

"[W]hen the negligent misrepresentation only interferes with intangible economic interests, courts have developed more restrictive rules of recovery." *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 111 (Iowa 2012) (quoting *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 690 (Iowa 2010)). When intangible economic interests are at stake, as they are here for Doe, a defendant is liable for the tort of negligent misrepresentation if:

> (1) [T]he defendant was in the business or profession of supplying information to others; (2) the defendant intended to supply information to the plaintiff or knew that the recipient intended to supply it to the plaintiff; (3) the information was false; (4) the defendant knew or reasonably should have known that the information was false; (5) the plaintiff reasonably relied on the information in the transaction that

the defendant intended the information to influence; (6) and the false information was the proximate cause of damage to the plaintiff.

*AT&T Corp. v. Aventure Commc'n Tech., LLC*, 207 F. Supp. 3d 962, 1021 (S.D. Iowa 2016) (alteration in original) (quoting *Boliver v. Kester*, No. 15–1973, 2016 WL 4384369, at *3 (Iowa Ct. App. Aug. 17, 2016)). Liability for negligent misrepresentation is not confined to traditional commercial transactions. *See Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 126 (Iowa 2001). An individual who acts as an advisor, such as a school guidance counselor, can be liable for supplying false information. *Id.* However, an individual will not be liable simply for providing "personal opinions or statements of future intent" to a plaintiff. *Id.* at 127. The information provided must actually be false. *Id.*

Doe asserts Voos told him "she intended to reach a mutual agreeable resolution with the parties" and "[Complainant #1] was not pursuing conduct at th[e] time [of the November 2015 meeting]." ECF No. 129-1 at 43 (citing ECF No. 131-2 at P-APP 537–40; ECF No. 131-19 at P-APP 1717). Doe contends these statements were false. *Id.* at 44. He argues these statements made him believe the allegations by Complainant #1 would be informally resolved, and Grinnell "would take no further action in regard to [Complainant #1's] report." ECF No. 1 ¶ 151; *see also* Mot. Summ. J. Hr'g Tr. 53:20–55:6, ECF No. 149 at 53–55. Defendants argue, even if Doe had the impression Complainant #1's allegations would be permanently resolved with an informal resolution, Voos did not tell Doe so—Voos only expressed her prospective hope that a resolution would be reached at the disciplinary meeting. ECF No. 100 at 29–30; Mot. Summ. J. Hr'g Tr. 28:6–19, ECF No. 149 at 28.

The Court concludes the undisputed facts demonstrate Defendants did not provide Doe with false information as required to sustain a negligent misrepresentation claim under Iowa law. Voos's statement regarding her desire to reach a mutually agreeable resolution is a statement of

future intent. Statements of future intent do not qualify as false information for purposes of a negligent misrepresentation claim. *Sain*, 626 N.W.2d at 127. As for Voos's statement regarding Complainant #1's decision not to pursue further discipline, there is no genuine dispute regarding the truth of that statement. Voos told Doe during the meeting that Complainant #1 did not wish to pursue a formal resolution "at this time." ECF No. 131-2 at P-APP 537. There is no evidence Voos said anything to Doe about Grinnell's future plans regarding his discipline or that the informal resolution would be final. Defendants' later decision to consolidate Complainant #1's complaint with Complainant #2's complaint and to pursue formal resolution does not render Voos's statement about Complainant #1's decision false.

Because the undisputed facts show Defendants did not provide Doe with false information, the Court does not need to consider the remaining elements of negligent misrepresentation. There is no triable question of fact regarding Doe's negligent misrepresentation claim. His claim fails as a matter of law. The Court grants summary judgment to Defendants on Doe's negligent misrepresentation claim. Defendants Moschenross, Voos, and Asberry are dismissed as parties to this case.

## V.   CONCLUSION

The Court grants in part and denies in part the Motion for Summary Judgment filed by Defendants Grinnell College, Sarah Moschenross, Angela Voos, and Bailey Asberry. The Court concludes there are disputes of material fact regarding the accuracy of the outcome of Doe's disciplinary proceeding and whether that inaccuracy was caused by gender bias. The Court denies Defendants' motion for summary judgment on Doe's Title IX claim, Count II. The facts as to whether Grinnell substantially performed its contractual duties or breached its contract so that Doe suffered damage are genuinely disputed. Because the material facts regarding Doe's breach of contract claim are in dispute, the Court denies Defendants' motion for summary judgment as to

Doe's breach of contract claim, Count III.

The material facts of Doe's estoppel claim and his negligent misrepresentation claim are not disputed. The undisputed facts demonstrate Grinnell did not make clear and definite promises to Doe that he relied upon to his detriment. The undisputed facts also show Defendants did not provide Doe with false information. Thus, the Court grants Defendants' motion for summary judgment on Doe's estoppel and negligent misrepresentation claims, Counts IV and V.

**IT IS ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 94, is **GRANTED IN PART AND DENIED IN PART**.

Based on the Court's ruling, the Clerk is directed to terminate the following parties as defendants: Sarah Moschenross, Angela Voos, and Bailey Asberry. No counts remain naming them as defendants.

**IT IS SO ORDERED.**

Dated this 9th day of July, 2019.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE